**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Thomas A. PAEPKE, Defendant-Appellee.**

No. 76–1203.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1976.

Decided Feb. 16, 1977.

As Amended March 28, 1977.

Scott P. Crampton, Asst. Atty. Gen., Carleton D. Powell, Atty., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Charles E. Neider, Madison, Wis., for appellee.

Before CASTLE, Senior Circuit Judge, TONE, Circuit Judge, and KUNZIG,* Judge.

KUNZIG, Judge.

This ·case of first impression asks the court to determine to what extent the exclusionary rule [1] prohibits the use of illegally seized evidence to prove tax fraud allegedly committed some months after the seizure. District Judge Doyle, in the Western District of Wisconsin, suppressed all evidence arising from an illegal seizure by county authorities. The Government appeals, with jurisdiction of the court based upon 18 U.S.C. § 3731 (1970).[2]

---

* Judge Robert L. Kunzig of the United States Court of Claims is sitting by designation.

1. See, e. ·g., Garner v. United States, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976); United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976); Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); United States v. · Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

2. 18 U.S.C. § 3731 provides in part:

An appeal by the United States shall lie to a court of appeals from a decision or order of · a district courts (sic) suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose·of delay and that the evidence is a substantial proof of a fact material in the proceeding.

The appeal in all such cases· shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

We hold the evidence to be properly admissible.

Events leading to this federal tax prosecution began with Marin County, California police arresting Arnold Paepke, defendant-appellee, at the San Francisco airport on October 26, 1971. At the time of his arrest, $12,725 was seized from him. He was picked up as a result of an earlier search of a house in Mill Valley, California. The search of that house connected Paepke with illegal drug activity.

Following the arrest, the State of California sought to prosecute Paepke for violation of narcotics laws. The charges were dropped, however, because the state court (finding the original search of the house illegal) suppressed all evidence and information obtained as a result of that search. The suppressed evidence included the $12,725 seized from Paepke.

After the state charges were dropped, Paepke went back to Madison, Wisconsin. The $12,725, however, was turned over to the Internal Revenue Service which immediately terminated Paepke's tax year in October 1971,[3] assessed a deficiency of approximately $26,000 and levied upon the funds seized. In December 1971, Paepke filed in the United States Tax Court, seeking to have the money returned to him. The suit was dismissed on jurisdictional grounds.[4]

On April 3, 1972, Paepke filed an individual tax return for the taxable year ending December 31, 1971. This return, made and subscribed under the penalty of perjury, listed an adjusted gross income of $3,275, all allegedly derived from "golf playing." The return noted a total tax due and owing of $234, stated that $12,725 had been seized by the IRS on October 27 (sic), 1971, and claimed a refund of $12,491. Following receipt of the return, the IRS referred the matter to its Intelligence Division.

About two years later, on January 15, 1974, Paepke submitted another refund claim to the IRS. He restated that in 1971 he had an adjusted gross income of $3,275, and a tax liability of $234. Once again he requested a refund of the difference between the $234 and the amount which had been seized in California. Obtaining no relief from this request, he next filed a civil suit for refund in the United States District Court for the Western District of Wisconsin on March 13, 1974. That suit is still pending and inactive.

The United States then filed criminal charges in the Western District of Wisconsin on August 8, 1975 (giving rise to this appeal). The indictment charged that Paepke knowingly, under penalty of perjury, understated his adjusted gross income for the year 1971 and misrepresented its source.[5] Prior to trial, Paepke moved to

---

3. The termination was pursuant to 26 U.S.C. § 6851(a)(1) which provides in part:

> In general.—If the Secretary or his delegate finds that a taxpayer designs quickly to depart from the United States or to remove his property therefrom, or to conceal himself or his property therein, or to do any other act tending to prejudice or to render wholly or partly ineffectual proceedings to collect the income tax for the current or the preceding taxable year unless such proceedings be brought without delay, the Secretary or his delegate shall declare the taxable period for such taxpayer immediately terminated, and shall cause notice of such finding and declaration to be given the taxpayer, together with a demand for immediate payment of the tax for the taxable period so declared terminated and of the tax for the preceding taxable year or so much of such tax as is unpaid, whether or not the time otherwise allowed by law for filing return and paying the tax has expired;

and such taxes shall thereupon become immediately due and payable.

4. The petition was dismissed in August 1973. The IRS had not issued Paepke a deficiency notice. Such a notice was, at that time, a jurisdictional prerequisite to review by the Tax Court. Subsequently, the Supreme Court decided *Laing v. United States,* 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976). That case held it improper for the IRS not to issue a deficiency notice, thereby denying a taxpayer access to the Tax Court. 423 U.S. at 176, 183–85, 96 S.Ct. 473.

5. The statutory basis for the prosecution is 26 U.S.C. § 7206(1) which reads:

> Any person who—
> Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury,

suppress all evidence obtained from him in the illegal search and seizure in California. U.S. District Judge Doyle agreed the evidence had been illegally seized and barred all evidence relating thereto, including documents concerning Paepke's efforts to retrieve the money, from use in the federal tax fraud trial.

Judge Doyle's decision that the money was illegally seized in California is not now contested before the Court of Appeals. All parties agree that the initial seizure was illegal. What is at issue is that part of the Judge's order barring the Government from using any evidence relating to the $12,725 that was seized by the Marin County police. This includes:

A. *Documentary Evidence*

1. The complaint in the Tax Court suit filed in December 1971;
2. Paepke's tax return for 1971;
3. The refund claim filed with the IRS in January 1974;
4. The complaint in the civil suit for refund filed in the United States District Court for the Western District of Wisconsin in March 1974;

as well as:

B. *Evidence Concerning Possession of the Money*

1. The fact of Paepke's possession of $12,725 on October 26, 1971, at the time of seizure.[6]

The District Judge entered his suppression order on February 26, 1976. The United States filed notice of appeal the same day.

Before outlining the arguments of the parties, a brief statement of the role of the court in determining the application of the exclusionary rule might be helpful.

█ The exclusionary rule was adopted to assure the Fourth Amendment right of all citizens "to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures.". *United States v. Calandra,* 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). This rule precludes the use in a criminal proceeding against the victim of an illegal search and seizure of all evidence obtained, directly or indirectly, in violation of the Fourth Amendment. *See, e. g., Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The "prime purpose" of the rule "is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra, supra,* 414 U.S. at 347, 94 S.Ct. at 620.

However, not all evidence which might result in some additional deterrent to improper conduct need be excluded. As recently as a few months ago, the Supreme Court spoke to this very issue:

"[D]espite the broad deterrent purpose of the exclusionary rule, it has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976).

As with any remedial device, the use of the exclusionary rule should be restricted to those situations where its forward-looking objectives are thought best served. *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974).

█ In determining whether the remedial objectives are served by an application of the exclusionary rule, the court must, as outlined in *Calandra,* balance the potential injury which can occur from an application of the rule against any promotion of Fourth Amendment freedoms by deterring police misconduct. *United States v. Calandra, supra* at 354, 94 S.Ct. 613. In this instance,

and which he does not believe to be true and correct as to every material matter; shall be guilty of a felony . . .

6. The money was held by the IRS as an asset of Paepke's, that is as prepaid taxes, and was thereby also imputed to Paepke's possession on December 31, 1971.

the potential injury is to the self-reporting system of tax collection.

Thus, we must now balance the importance of efficient tax collection against deterrence of police misconduct.

In seeking reversal of Judge Doyle's suppression order, the Government submits three principal arguments. They are: 1) The primary purpose of the exclusionary rule (deterring future illegal police actions) was substantially satisfied by the suppression of the evidence in the California narcotics prosecution; 2) Since the erring police officers could not possibly have foreseen that the improperly seized evidence would be used in a subsequent income tax prosecution, there could be in actuality, no deterrent effect, and the purpose of the exclusionary rule would be unsatisfied; and 3) Even. if there were a deterrence resulting from an application of the exclusionary rule in this case, that deterrence would be minimal compared with the potentially harmful effect upon the self-reporting system of the U.S. tax structure.

The Government's second argument is two-pronged: Paepke's post-seizure admission in documents that he possessed the $12,725 on October 26, 1971, *purged* the evidence of the contamination; and, in any event, it was not predictable that Paepke would later allegedly commit another crime (false income tax return).

Paepke counters, seeking affirmance of the District Judge's order, by urging the court to accept three principal positions, each point virtually mirroring one of the Government's, in reverse: 1) The purpose of the exclusionary rule requires that *all* evidence derived from the illegal seizure in California be suppressed. Without suppression, sufficient deterrence of future police misconduct is not achieved; 2) The use to which the Government now wants to put the evidence was predictable at the time of the seizure. As all citizens must file income tax returns, it was foreseeable that the Federal Government would seek to prose-

cute for any improper filing; 3) Paepke contends that to allow the Government to use the illegally seized evidence will breed disrespect for the collection methods of the IRS. This disrespect will damage a system based chiefly on voluntary cooperation by taxpayers.

We hold for the Government (plaintiff-appellant).

We conclude that the District Judge erred in suppressing the evidence offered by the United States. Two types of evidence were sought to be introduced: the documents filed by Paepke, and evidence concerning the fact of his possession of $12,725 on the day it was seized. As the factors examined in deciding that each is admissible are different, the analysis following is separated into two sections.

## A. DOCUMENTARY EVIDENCE

In this section we consider whether the exclusionary rule should prevent the Government from introducing into evidence four documentary items:

1.  The complaint in the Tax Court filed in December 1971;
2.  Paepke's tax return for 1971;
3.  The refund claim filed with the IRS in January 1974;
4.  The complaint in the civil suit for refund filed in the United States District Court for the Western District of Wisconsin in March 1974.

Our focus is on the question of whether Paepke's actions in filing these documents with the Government sufficiently purged the information contained therein of contamination resulting from the illegal seizure in California.[7] If the contamination is purged by *Paepke's own actions* and there are no strong countervailing reasons, such as deterring future police misconduct or inflicting great harm to the tax system, then the documents should be admitted. *United States v. Calandra, supra.*

---

7.  Although Paepke does not specifically counter this argument of the Government, he does so indirectly. In addition, the District Judge

held that Paepke's submissions to the Government did not sufficiently purge the evidence of the taint of illegality to allow their admission.

The recent statements of the District of Columbia Circuit are helpful in determining the purging effect of Paepke's actions:

> . . . what is important [in deciding whether contamination has been purged] is an interval of time during which the originator of the statement or testimony can ponder the consequences of what he does and then willingly do it. *United States v. Scios*, No. 75–1619 (D.C.Cir. Aug. 23, 1976) Slip Op. at 15.[8]

In the instant case, Paepke had over five months to consider the consequences of failing to state the $12,725 seized in California as income on his tax return. (Assuming, *arguendo*, that it was income). We think that this is sufficient time to purge the taint from the illegal seizure.[9] By comparison, in *Scios*, the court found a two or three month period sufficient. *United States v. Scios, supra*, at 13–14. Also, the Supreme Court in *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), determined that a confession freely given just a few days after the same confession had been illegally coerced was admissible. *See also, Brown v. Illinois*, 422 U.S. 590, 604 n. 11, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Nardone v. United States*, 308 U.S. 338, 341–42, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

Our conclusion that Paepke's actions purged the contamination sufficiently to allow use of this evidence does not rest on the time factor alone. Paepke was assisted and advised by professional counsel. His tax returns were prepared by the same counsel who represented him before this court. As in *Scios, supra*, we think that this fact further purges any original taint. It gives a totality of circumstances which shows a man seeking advice, considering in advance the consequences of a course of action, and then voluntarily giving the Government certain information. *United States v. Scios, supra* at 16; *see Brown v. Illinois, supra* 422 U.S. at 611, 95 S.Ct. 2254 (Powell, J., concurring in part).

■ Paepke's argument, to the contrary, that the Government had not shown the contamination sufficiently purged is not convincing. He would have the court decide that, because the seized money was immediately turned over to the IRS, this prosecution was foreseeable—that he was confronted with a Hobson's choice of not filing and being prosecuted for that failure, or filing and being prosecuted for tax fraud.[10] As this prosecution was foreseeable, he continues, the Government has the burden of showing that the evidence is purged. Paepke claims that the Government has not made this showing, and that the evidence should be excluded in order to deter future police misconduct.

However, even if the Government bears this burden, we feel it has been met. Paepke was not faced with a Hobson's choice. He could have stated the $12,725 as income, paid the proper tax, and claimed the Fifth Amendment as to its source.[11] *Garner v. United States*, 424 U.S. 648, 96

---

8. In *Scios*, the court held that the circumstances separating a witness's voluntary testimony from the illegal seizure sufficiently purged the contamination attached to the illegal seizure to deny the application of the exclusionary rule.

9. Paepke's income tax return was filed more than two months after the state criminal proceedings were dropped on January 28, 1972. So at the time he filed he had already realized a substantial benefit from the exclusionary rule—freedom from prosecution on the state narcotics charges.

10. As authority for the point that he was faced with a Hobson's choice, Paepke relies on *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968). The reliance is misplaced. In *Marchetti*, the Supreme Court

held that a person's assertion of the Fifth Amendment privilege against self-incrimination barred his prosecution for violating the federal wagering tax statutes because the occupational tax returns faced the taxpayer with "substantial and 'real,' hazards of [self-]incrimination." 390 U.S. at 53, 88 S.Ct. at 705. The instant case involves neither the type of return nor the pervasive federal and state scheme designed to single out gamblers for prosecution found controlling in *Marchetti*. *See Garner v. United States, supra*, 96 S.Ct. at 1186; *Albertson v. SACB*, 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965).

11. Note that Paepke (defendant-appellee) still would have been due a sizeable refund.

S.Ct. 1178, 1183–88, 47 L.Ed.2d 370 (1976). The existence of this choice illustrates that the local authorities, at the time of Paepke's arrest, could not have foreseen this prosecution. Therefore, no deterrent effect would be achieved by excluding the evidence.

Thus it would appear that Paepke's actions in providing the Government with documentary evidence showing that he possessed the money on the date seized purges the evidence of its original contamination.[12] But we must first examine whether there are countervailing factors which should yet force us to exclude this evidence. *United States v. Calandra, supra.*

What is at issue here is the self-reporting system of taxation. Paepke would have us decide that to allow the Government to use the illegally seized evidence will breed disrespect for the collection methods of the IRS. *See United States v. Bisceglia,* 420 U.S. 141, 95 S.Ct. 915, 43 L.Ed.2d 88 (1975).

In order for the self-reporting system to function properly, there must be not just truthful reporting, but also the ability to assure truthful reporting. The ability to assure honest returns is lodged in the right of the Government to prosecute for knowing falsification on individual tax returns. As Chief Justice Burger stated in *United States v. Bisceglia:*

> [I]t would be naive to ignore the reality that some persons attempt to outwit the [tax] system . . . 420 U.S. at 145, 95 S.Ct. at 918.

To prevent the Government's use of these documents would frustrate the enforcement process. To allow Paepke's position would in effect deny the existence of information freely given by him to the Government for all but refund purposes.

■ Paepke, however, does not rest on his "breed disrespect" argument alone. He also claims that the exclusionary rule requires that *all* evidence derived from an illegal seizure must be suppressed. We disagree. The deterrence purpose of the exclusionary rule does not require that all evidence be suppressed. It commands only that evidence which would achieve substantial deterrence be suppressed. *Stone v. Powell, supra,* 96 S.Ct. at 3048; *United States v. Calandra, supra,* 414 U.S. at 348, 94 S.Ct. 613.

■ We think the substantial deterrence required by the exclusionary rule was satisfied in this case by the suppression of the evidence in the California prosecution. As we stated above, it was not foreseeable to the local arresting officers that Paepke would, subsequent to the application of the rule in California, file an allegedly false income tax return. Any future deterrent effect realized by suppression in the instant case would be minimal at best.

In summarizing section A., the court is mindful of the all-important fact that Paepke *had a choice.* He could have listed the $12,725 as income, paid the proper tax, and claimed the Fifth Amendment as to its source. Since the exclusionary rule has never required that *all* evidence be suppressed, given the purging effect of Paepke's actions and balancing the potentially great harm to the self-reporting tax system against only a marginal deterrent result gained by excluding the evidence, we conclude that the documentary evidence should not have been suppressed by the District Court.

## B.  EVIDENCE CONCERNING POSSESSION OF THE MONEY

■ In this section we consider the admissibility of evidence showing the fact of Paepke's possession of the $12,725 on October 26, 1971. We again employ the balanc-

---

**12.** We note that the Supreme Court has consistently refused to adopt the "but for" test employed by the District Court below. If the mere fact of an illegal seizure plus a piece of evidence somehow derived through a chain of causation emanating from the illegal search, were sufficient somehow to contaminate this piece of evidence so as automatically to bar its admission, there would be no exception to the exclusionary rule whatsoever. *See Brown v. Illinois,* 422 U.S. 590, 603, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Scios, supra.*

ing test of *Calandra* in holding the evidence not barred by the exclusionary rule. The focus is on whether illegally seized evidence itself can be used to prove the commission of subsequent tax fraud.[13]

Framework for analysis is provided by two recent Circuit Court decisions which allow the use of illegally seized evidence as affirmative proof of perjury committed before a grand jury—*United States v. Raftery*, 534 F.2d 854 (9th Cir. 1976), and *United States v. Turk*, 526 F.2d 654 (5th Cir.), cert. den. 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976). In both *Raftery* and *Turk*, the witnesses were aware of the illegal seizure when they testified; both knew that the evidence could not be used against them directly. Yet both lied in testifying before grand juries and were prosecuted for the subsequent crime of perjury on the basis of illegally seized evidence.

Obvious parallels exist between the crime of perjury before a grand jury and the crime of filing a false income tax return. The crime of "False declarations before grand jury or court" is delineated in 18 U.S.C. § 1623 (1970):

> (a) Whoever under oath in any proceeding before . . . any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both.

Similarly, the tax laws provide that any person who:

> Willfully makes and subscribes any return . . . . which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5,000, or imprisoned not more

than 3 years, or both, together with the costs of prosecution.

26 U.S.C. § 7206(1) (1970).

Both statutes concentrate on the making of false material declarations as the criminal act. Both laws provide for stiff penalties upon conviction. But most importantly, both laws require that the declarant be aware of his responsibility to tell the truth. 18 U.S.C. § 1623 does this by requiring that the testimony be given under oath. The tax law requires that the declarations be truthful, under penalty of perjury. It is this requirement of truthfulness in both statutes that brings the case now before the court within *Raftery* and *Turk*.

*Raftery* and *Turk* involved the affirmative use of evidence seized in violation of the Fourth Amendment in a trial for the subsequent crime of perjury. The case at bar involves the use of evidence seized in violation of the Fourth Amendment in a trial for the subsequent crime of tax avoidance. We fail to discern any substantial difference between the two situations and hold that *Raftery* and *Turk* are applicable to the case at bar. *Cf. Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 1183, 47 L.Ed.2d 370 (1976).

Paepke, however, contends that *Raftery* and *Turk* are different. He urges that in those cases it was not predictable that the defendants would be called to testify before grand juries. Here, to the contrary, it was foreseeable that Paepke would file a tax return. As it was foreseeable, he argues, the evidence should be suppressed on the basis of the forward-looking policy of the exclusionary rule.

We have traveled the "foreseeability" road before, Section A, *supra*. Paepke had a choice which prevents this type of prosecution from being predictable. Therefore, the forward-looking policy of the exclusion-

---

**13.** It must be borne in mind throughout Section B what type of evidence the Government seeks to introduce. The United States wants to use only facts that show Paepke's possession of the money on October 26, 1971. The Government seeks to show, by application of the net worth method, that Paepke misstated his income as to source and amount. As Judge Doyle stated in his opinion, the IRS plans to marshal its evidence as to mask entirely the circumstances surrounding the arrest or the fact that the seizure occurred.

ary rule would not be served by suppression in this case.

Further, we think that Judge Doyle drew too narrow a rule from *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1972), and *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954), in excluding this evidence. The District Judge, following *Harris,* stated that the Government could not use illegally seized evidence as affirmative evidence of guilt. (Although *Harris* would admit the evidence for impeachment purposes.)

However, the Supreme Court, before the District Judge rendered his decision, had foreshadowed a broadening of *Harris* and *Walder* when, in *Oregon v. Hass,*[14] it stated:

> [T]he shield provided by *Miranda* (*v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966)) is not to be perverted to a license to testify inconsistently, or even *perjuriously,* free from the risk of confrontation with prior inconsistent utterances. (emphasis supplied)
>
> *Oregon v. Hass,* 420 U.S. 714, 722, 95 S.Ct. 1215, 1221, 43 L.Ed.2d 570 (1975).

*Raftery,* citing *Turk* with approval,[15] seized upon the foreshadowing and added *Hass* to *Walder* and *Harris.* The result was the admission of illegally seized evidence to prove subsequently committed perjury.[16]

We agree with the Ninth Circuit's reasoning in *Raftery* and think that, absent some compelling reason, *Raftery* requires the admission in this case of evidence concerning the fact of Paepke's possession of the money. It is to an examination of these possible reasons that we now turn.

Paepke presents two further reasons for not admitting the evidence: disrespect for IRS collection methods, and his claim that the exclusionary rule requires that *all* evidence derived from an illegal seizure be suppressed. Both were refuted in Section A, *supra.* Admission will not "breed disrespect" for IRS collection methods, but suppression might irreparably damage the foundation of our tax structure—self-reporting. Any marginal deterrent effect gained from exclusion is counterbalanced by the need to protect the tax system.

As to Paepke's second point, the exclusionary rule does not require the suppression of *all* evidence, *Stone v. Powell, supra,* 96 S.Ct. at 3048—only that evidence which will achieve substantial deterrence. That has been realized in this case by the suppression of the evidence in the California prosecution. *United States v. Raftery, supra* at 857; *see also, United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 3029–32, 49 L.Ed.2d 1046 (1976).

In summary, we conclude in Section B that evidence showing the fact of Paepke's possession of the money on the date seized should have been admitted. His alleged commission of the subsequent crime of filing a false income tax return makes this case analogous to the grand jury perjury cases of *Raftery* and *Turk.* Further, the primary purpose of the exclusionary rule was substantially satisfied by the suppression of evidence in the California narcotics prosecution. It was clearly unforeseeable to erring police officers that Paepke would later allegedly commit a separate crime. Finally, any additional deterrent effect resulting from the exclusion of the evidence is outweighed by the necessity of preserving the self-reporting system of the United States tax structure.

---

**14.** In *Hass,* testimony freely given by a defendant after his *Miranda* rights were read, but before the police car in which he was riding reached the station where he was to phone a lawyer, was held admissible at trial to impeach his inconsistent statements. *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *cf. United States v. Mandujano,* 425 U.S. 564, 575, 96 S.Ct. 1768, 1776–77, 48 L.Ed.2d 212 (1976).

**15.** In *Raftery,* the alleged perjury took place before a federal grand jury after the illegal seizure and suppression of evidence in the state court. *United States v. Raftery,* 534 F.2d 854, 857–58 (9th Cir. 1976).

**16.** Unfortunately Judge Doyle did not have the benefit of *Turk* or *Raftery.* *Turk* was decided just a few days prior to the issuance of the District Court order in this case, while *Raftery* was not decided until two weeks later.

Accordingly, we hold both that the documents filed by Paepke to obtain return of the $12,725 and the evidence showing the fact of his possession of the money on October 26, 1971, are admissible. The order of the District Judge is vacated and the case remanded to the District Court for proceedings not inconsistent with this opinion.

VACATED AND REMANDED.

TONE, Circuit Judge, concurring.

While I concur in the result reached by the court, I reach that result by a narrower path and therefore separately state my views.

The defendant was not faced with the dilemma of either not filing and being prosecuted for that omission or filing and being prosecuted for tax fraud. If the seized money was 1971 income he could have included it and declined to state its source if such a statement would incriminate him. He could also, I believe, have declined to state even the amount of his income if that fact alone might have tended to incriminate him, cf. Garner v. United States, 424 U.S. 648, 96 S.Ct. 1178, 1186–1187, 47 L.Ed.2d 370 (1976), and California v. Byers, 402 U.S. 424, 439–442, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971) (Harlan, J., concurring), although it is doubtful that such a possibility existed in view of the dismissal of the state charges. The one course that was not open to defendant was to make a false statement in his income tax return.

If he did make a false statement, which remains to be determined, he is in the same position as a witness who testifies falsely. Illegally obtained evidence that would not otherwise be admissible, becomes admissible for the purpose of proving the falsity of the statement under oath. Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954); Harris v. New York, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971); Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). The illegality of the seizure does not allow him to commit with impunity the new crime of perjury or false statement.

Because the defendant here did not have immunity when he filed his return, United States v. Turk, 526 F.2d 654 (5th Cir.), cert. denied, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976), and United States v. Raftery, 534 F.2d 854 (9th Cir. 1976), in each of which the defendant gave grand jury testimony under a grant of immunity, are not precisely in point.* These cases do, however, extend the Walder-Harris-Hass doctrine to a criminal prosecution for the false-statement offense.

The balancing approach required by United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), is consistent with this analysis. Inasmuch as "the primary, if not the sole, function of the exclusionary rule is deterrence," United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 3033 n. 34, 49 L.Ed.2d 1046 (1976), there is as little to be said for the need to extend that rule to the facts here as there was in Walder, Harris, or Hass. The rule has already had its deterrent effect when the state criminal charges resulting from the illegal search and seizure are aborted. The social value of any further deterrent effect that would result from applying the rule to bar the use of the evidence to prove the falsity of a later statement made under the penalties of perjury is so attenuated and conjectural as to be entitled to little weight. On the other side of the scale, extending the rule as defendant advocates would not only have the usual truth-suppressing effect, see Elkins v. United States, 364 U.S. 206, 216, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), but would encourage the commission of a future crime of false statement, thus converting the rule into a "personal constitutional right" of the defendant, which, Calandra tells us, it is not.

* In Raftery the evidence was suppressed due to a violation of a California statutory provision concerning the special requirements of nighttime searches, not the Fourth Amendment.

Raftery, supra, 534 F.2d at 855; cf. Elkins v. United States, 364 U.S. 206, 245–249, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) (Frankfurter, J., dissenting).