STATE of Wisconsin, Plaintiff-Respondent,
v.

Jack D. KENNEDY, Defendant-Appellant.†

Court of Appeals

*No. 85–2362–CR. Submitted on briefs August 14, 1986.—Decided October 7, 1986.*

(Also reported in 396 N.W.2d 765.)

---

† Petition to review denied.

310

For the defendant-appellant, Jack D. Kennedy, there was a brief by *Steven P. Weiss,* assistant state public defender of Madison, WI.

For the plaintiff-respondent, State of Wisconsin, there was a brief by *Bronson C. La Follette,* attorney general, and *Daniel J. O'Brien,* assistant attorney general of Madison, WI.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Jack Kennedy appeals a judgment of conviction and an order denying his motion for postconviction relief following his multiple convictions for vehicular homicide and causing injury by intoxicated

use of a motor vehicle. Kennedy raises a variety of issues, including a challenge to the constitutionality of the charging statutes and the statutory denial of the physician-patient privilege in homicide trials. Additionally, Kennedy claims that the trial court erred by failing to suppress certain evidence, dismiss a portion of the information containing multiplicitous charges, grant a mistrial after he was called as an adverse witness, and properly instruct the jury on the element of "great bodily harm." Kennedy also contends that the trial court abused its sentencing discretion by imposing a sentence totaling nineteen years. We conclude that the challenged statutes are constitutional, that any error was harmless, and that the trial court did not abuse its sentencing discretion. Accordingly, we affirm the judgment and order.

Kennedy was involved in a motor vehicle accident in the State of Wisconsin in which four people were killed and two children were seriously injured. Kennedy was also injured and was transported to a Minnesota medical facility. At that facility, two blood samples were taken. Both were drawn at the attending physician's request and not at the request of a law enforcement official. The first sample was taken for diagnostic purposes, but the second was taken primarily to determine Kennedy's blood alcohol concentration (BAC). Kennedy's vehicle was impounded and secured in the local police garage.

Kennedy was charged with four counts of vehicular homicide while intoxicated, four counts of vehicular homicide with a BAC of .10% or more, four counts of homicide by negligent use of a motor vehicle, and two counts of causing great bodily injury by intoxicated use

of a motor vehicle. Sections 940.09(1)(a), (b), 940.08(1), 940.25(1)(a), Stats. At the trial, the state introduced a partially filled vodka bottle into evidence. This bottle had been found in Kennedy's car during a search conducted pursuant to a search warrant that the state now concedes was defective. The state also introduced evidence of Kennedy's BAC based on analyses of both blood samples. One analysis was conducted by a Minnesota agency and the other by a Wisconsin agency. During the trial, the state attempted to call Kennedy as an adverse witness. The jury convicted Kennedy on all fourteen counts.

At the sentencing hearing, the trial court dismissed the eight counts relating to vehicular homicide with a BAC of .10% or more and homicide by negligent use of a motor vehicle. The court then imposed consecutive sentences totaling nineteen years on the remaining six counts.

## CONSTITUTIONALITY OF THE CHARGING STATUTES

Kennedy challenges the constitutionality of secs. 940.09 and 940.25, claiming that they create a presumption of guilt that forces a defendant to prove his innocence. A similar challenge was recently addressed and rejected by our supreme court in *State v. Caibaiosai*, 122 Wis.2d 587, 363 N.W.2d 574 (1985). That decision is binding on this court and, therefore, we find the questioned statutes constitutional.

## ADMISSIBILITY OF THE VODKA BOTTLE

■

Kennedy contends that the vodka bottle found in his car two days after the accident was inadmissible. This bottle was discovered during a search conducted pursuant to a search warrant based upon an affidavit containing several critically inaccurate statements. Generally, evidence obtained under such circumstances is inadmissible. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). The state admits that the search warrant was defective, but argues that the bottle was admissible under either the plain view or inevitable discovery doctrine.

■

The fourth amendment to the United States Constitution proscribes unreasonable searches and seizures. The ultimate standard of the fourth amendment is reasonableness in light of the facts and circumstances of each case. *Bies v. State*, 76 Wis.2d 457, 468, 251 N.W.2d 461, 466 (1977). In determining whether police conduct is constitutionally reasonable, a court applies a test that is essentially indeterminate and flexible. *Id.* A reviewing court will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied. *Id.* at 469, 251 N.W.2d at 467.

The state's argument that the vodka bottle was admissible under the plain view doctrine must fail. An officer at the accident scene saw the vodka bottle in plain view but failed to seize it because he was caring for the injured. If the officer had initially seized the bottle or had seized it immediately after the injured had been cared for, the seizure would have been proper. However,

the plain view doctrine cannot be used to justify an illegal search conducted two days later. *See State v. Davidson*, 44 Wis.2d 177, 194-96, 170 N.W.2d 755, 764-65 (1969).

Under the plain view doctrine, the seizure of the evidence must take place contemporaneously or immediately following the view. *See, e.g., State v. Spraggin*, 71 Wis.2d 604, 610-12, 239 N.W.2d 297, 303-05 (1976). A search occurring several days after the view cannot be justified because there is no assurance that the evidence will still be present or that its condition would not be significantly changed. The police entered Kennedy's vehicle and seized the vodka bottle pursuant to a search warrant they believed to be valid. There is no evidence that suggests that this entry and seizure was based upon the vodka bottle then being in plain view. Thus, the plain view doctrine cannot justify the illegal seizure of the bottle under the defective warrant. To find otherwise would invite the doctrine's abuse and infringe on an individual's rights under the fourth amendment.

The trial court admitted the vodka bottle into evidence based upon the doctrine of inevitable discovery. Under this doctrine, the fruits of an illegal search may be admitted if it can be shown by a preponderance of the evidence that the tainted fruits would have been inevitably discovered by lawful means. *State v. Washington*, 120 Wis.2d 654, 664, 358 N.W.2d 304, 309 (Ct. App. 1984), *aff'd on other grounds*, No. 83-1804-CR slip opinion. (Wis. Ct. App. Nov. 18, 1986). The state argues that the police would have inevitably discovered the vodka bottle during a routine inventory search of Kennedy's vehicle after it was impounded. An inventory

search is one of the few exceptions to the warrant requirement of the fourth amendment. *State v. Callaway*, 106 Wis.2d 503, 510, 317 N.W.2d 428, 432, *cert. denied*, 459 U.S. 967 (1982).

The doctrine of inevitable discovery is not an open door through which the fruits of all defective searches may be transformed into admissible evidence. The doctrine must be used with restraint and circumspection lest it become a vehicle abrogating the right of all citizens to be free from unreasonable searches and seizures. Nonetheless, it is applicable in this case.

It is clear that an inventory search of Kennedy's vehicle would have been conducted. The search was conducted pursuant to the defective search warrant because the police possessed the warrant and believed it to be valid. If a warrant had not been obtained, a routine inventory search would have occurred at the same time and in the same manner as the illegal search. During the inventory search, the unconcealed vodka bottle would have been discovered and seized, and it would have been admissible in evidence. *See Callaway*, 106 Wis.2d at 515–18, 317 N.W.2d at 435–36. These facts establish by a preponderance of the evidence that the vodka bottle would have been inevitably discovered by lawful means.

 The defective search warrant does not compel exclusion of evidence that would otherwise have been lawfully discovered and admissible in evidence. Individual rights are not controverted, nor is the public served, by excluding such evidence. *See Washington*, 120 Wis.2d at 664–65, 358 N.W.2d at 309. The exclusionary rule is designed to protect an individual's constitutional right to be free from unreasonable searches and seizures by removing any motive for the police to proceed in viola-

tion of that right. *United States v. Paepke*, 550 F.2d 385, 388 (7th Cir. 1977). This protection is unnecessary where evidence discovered by unlawful means would have been lawfully discovered in any event. Under these circumstances, the trial court properly admitted the vodka bottle under the doctrine of inevitable discovery.

## *ADMISSIBILITY OF THE BLOOD TEST EVIDENCE*

Kennedy maintains that the blood test evidence was inadmissible because the two blood samples drawn in Minnesota and the one BAC analysis performed by the Minnesota agency were not conducted as specified under the implied consent statute, sec. 343.305, Stats.[1] Kennedy also argues that the blood test evidence was inadmissible because it was protected under Minnesota's physician-patient privilege.

Whether a statute applies to a particular set of facts is a question of law. *See State ex rel. Schaeve v. Van Lare*, 125 Wis.2d 40, 45, 370 N.W.2d 271, 274 (Ct. App. 1985). Upon review, questions of law are decided independently without deference to the trial court's decision. *Id.*

---

[1] It is undisputed that the procedures outlined in sec. 343.305, Stats., were not complied with. Kennedy was not under arrest when the blood samples were drawn nor informed that he had a right to an alternate chemical test. *See* sec. 343.305(2), (3), (5), Stats. The Minnesota agency that conducted a blood alcohol analysis on one sample was not certified by the Wisconsin Department of Health and Social Services. *See* sec. 343.305(10), Stats. Ordinarily, the sanction for failing to comply with sec. 343.305 is suppression of the evidence obtained. *See State v. Renard*, 123 Wis.2d 458, 461, 367 N.W.2d 237, 238 (Ct. App. 1985).

The manner and method of obtaining evidence is governed by the law of the jurisdiction in which the evidence is secured. *See Desjarlais v. State,* 73 Wis.2d 480, 491–98, 243 N.W.2d 453, 459–62 (1976); *see also Kluck v. State,* 37 Wis.2d 378, 389–90, 155 N.W.2d 26, 31 (1967). A contrary conclusion would result in the unreasonable requirement that officials in one jurisdiction be aware of and implement the procedures adopted in a foreign jurisdiction. Consequently, Minnesota law governs the means by which the blood test evidence may be obtained. Here, the blood test evidence was not obtained in violation of Minnesota law. *See Tyler v. Commissioner of Public Safety,* 368 N.W.2d 275, 279 (Minn. 1985). Thus, noncompliance with sec. 343.305 did not render the blood test evidence inadmissible.

On the other hand, the rules of evidence governing admissibility are those of the forum state. Under Minnesota law, the blood test evidence may not have been admissible because it was protected under the physician-patient privilege. *See* Minn. Stat. sec. 595.02(1)(d) (1984). This is a policy decision that Minnesota is privileged to make, and it controls questions concerning the admissibility of evidence raised before its courts. Wisconsin, however, has chosen to make a different policy judgment. In Wisconsin, the physician-patient privilege does not apply in homicide trials when the "disclosure relates directly to the facts or immediate circumstances of the homicide." Section 905.04(4)(d), Stats. This policy choice governs the admissiblity of the blood test evidence in the courts of this state:

> Evidence that is privileged under the local law of the state which has the most significant relationship with the communication but which is not privileged

> under the local law of the forum, will be admitted
> unless there is some special reason why the forum
> policy favoring admission should not be given effect.

Restatement (Second) of Conflict of Laws, sec. 139(2) at 385 (1971); *see also Nelson v. American Employers' Ins. Co.*, 258 Wis. 252, 255, 45 N.W.2d 681, 682 (1951).

■

There is no reason why the policy decision made by Wisconsin, the forum state, should give way to the policy adopted by Minnesota. To the contrary, Wisconsin has a compelling interest in applying its law because the accident occurred within its borders. Because the blood test evidence was admissible under sec. 905.04(4)(d) on the vehicular homicide charges, the trial court committed no error by admitting it into evidence. *See State v. Jenkins*, 80 Wis.2d 426, 434–35, 259 N.W.2d 109, 113 (1977).

## *ADMISSIBILITY OF THE BLOOD TEST EVIDENCE ON THE NONHOMICIDE CHARGES*

■

Kennedy asserts that even if the blood test evidence was admissible on the homicide offenses, it was not admissible on the two charges of causing great bodily injury. It is clear that under sec. 905.04(4)(d), this evidence could only be received on the homicide charges. However, at trial, Kennedy failed to raise this issue. He did not request a limiting instruction nor a severance of the injury charges from those alleging homicide. Kennedy's failure to timely object to this evidence or to request a limiting instruction or severance constitutes a waiver of this issue. *See Taylor v. State*, 74 Wis.2d 255,

262, 246 N.W.2d 516, 519 (1976); *see also* sec. 901.03(1)(a), Stats.

## *EQUAL PROTECTION*

Kennedy contends that sec. 905.04(4)(d)'s exception to the physician-patient privilege violates his constitutional right to equal protection guaranteed under the fourteenth amendment. Kennedy claims that there is no rational basis for the application of the physician-patient privilege only in nonhomicide trials. We disagree.

If neither a fundamental right nor a suspect classification is involved, a statutory classification need only be rationally related to a legitimate state interest to withstand an equal protection challenge. *State v. Bleck*, 114 Wis.2d 454, 468–69, 338 N.W.2d 492, 499 (1983). The basic test is not whether individuals are treated differently but whether a reasonable basis justifies the different treatment. *Id.* A statute is presumed to be constitutional, and its unconstitutionality must be demonstrated beyond a reasonable doubt. *County of Milwaukee v. Proegler*, 95 Wis.2d 614, 629, 291 N.W.2d 608, 615 (Ct. App. 1980).

The physician-patient privilege is a procedural protection created by statute. Kennedy does not contend that sec. 905.04(4)(d)'s denial of this privilege in homicide trials creates a suspect class or infringes on a fundamental interest. The question remaining is whether the statute is rationally related to a legitimate state interest. By enacting this statute, the legislature has stated that those charged with the most serious of all crimes, homi-

cide, are not to be accorded the physician-patient privilege. This policy choice is rationally related to the state's compelling interest in detecting and punishing those persons suspected of such crimes. Accordingly, we conclude that sec. 905.04(4)(d) does not violate the equal protection clause of the fourteenth amendment.

## MULTIPLICITOUS CHARGES

Kennedy contends that the trial court erred by refusing to dismiss a portion of the information containing multiplicitous charges. Kennedy was charged with four counts each of vehicular homicide while under the influence, with a BAC of .10% or more, and by negligent use of a motor vehicle. He was also charged with two counts of causing great bodily injury by intoxicated use of a motor vehicle. All of the charges arose from the four deaths and the two injuries suffered in the accident.

Kennedy moved the court to dismiss the twelve homicide charges or, in the alternative, to dismiss the eight homicide charges relating to intoxication or the four negligent homicide charges. The trial court declined to do so prior to trial but at sentencing vacated the four negligent homicide convictions as lesser-included offenses. The court then sentenced Kennedy on four of the remaining eight homicide convictions and on the two injury convictions. Kennedy argues that the multiplicity of the charges filed against him improperly influenced the jury to believe he was guilty. *See United States v. Carter,* 576 F.2d 1061, 1064 (3rd Cir. 1978). Under the facts of this case, we disagree.

Pursuant to sec. 940.09(1)(c), the state may charge a defendant with vehicular homicide both while under

the influence and with a BAC of .10% or more for acts arising from the same incident. Additionally, the state may charge a separate count for each death under both offenses. *State v. Rabe*, 96 Wis.2d 48, 66–68, 291 N.W.2d 809, 818 (1980). However, if a defendant is convicted of both crimes, there is but a single conviction for sentencing purposes for each death. Section 940.09(1)(c), Stats. Here, both charges for each death were properly submitted to the jury and treated by the trial court as one conviction at sentencing. Thus, Kennedy's assertion that these charges were multiplicitous is without merit.

The trial court erred by refusing to dismiss the four negligent homicide charges as multiplicitous prior to Kennedy's trial. *See Rabe*, 96 Wis.2d at 61–66, 291 N.W.2d at 815–17. These charges are lesser-included offenses of the eight homicide charges relating to intoxication. *See* sec. 939.66(2), Stats; *see also State v. Cooper*, 117 Wis.2d 30, 33, 344 N.W.2d 194, 196 (Ct. App. 1983). Multiplicitous charges are impermissible. *Rabe*, 96 Wis.2d at 61–62, 291 N.W.2d at 815–16. This court recognizes that submitting multiplicitous charges to a jury may prejudice a defendant and we do not condone such a practice. Nevertheless, under the facts of this case, the trial court's error was harmless.

Even constitutional errors are subject to the harmless error doctrine. *State v. Billings*, 110 Wis.2d 661, 666–67, 329 N.W.2d 192, 194–95 (1983). An error is harmless if a reviewing court is able to determine beyond a reasonable doubt that there is no reasonable probability that the error contributed to the conviction. *Id.* In making this determination, we consider the frequency of the error, the nature of the state's evidence

against the defendant, and the nature of the defense. *Id.* at 669, 329 N.W.2d at 195.

Here, the four negligent homicide charges were lesser-included offenses of the other eight vehicular homicide charges. Consequently, they would have been submitted to the jury for their consideration even if they had not been filed against Kennedy. Although it is true that the process by which a jury considers lesser-included offenses differs from that used to consider principal charges, there is little danger that this difference resulted in any prejudice to Kennedy's right to a fair trial. The state introduced ample evidence to convict Kennedy on the vehicular homicide and injury charges relating to intoxication. This evidence included the two BAC analyses, a partially filled vodka bottle found in Kennedy's car, and Kennedy's own admission to police that he had been drinking on the date of the accident. Moreover, the trial court corrected its error by dismissing the negligent homicide convictions at sentencing. Under these circumstances, we conclude beyond a reasonable doubt that there is no reasonable probability that the trial court's error contributed to Kennedy's conviction on the ten offenses relating to intoxication. Therefore, the error was harmless.

## *ADVERSE WITNESS*

■■

Kennedy submits that the state's attempt to call him as an adverse witness had such a prejudicial impact on the jury that he is entitled to a new trial. It is undisputed that Kennedy had an absolute right pursuant to the state and federal constitutions not to testify at his trial. Nevertheless, we conclude that under the circum-

stances of this case, the trial court's curative instructions rendered this error harmless.

After the state attempted to ·call Kennedy as a witness, the trial court immediately excused the jury. The court then properly reprimanded the district attorney for his error and described the curative instructions it would read to the jury upon its recall. The court extended to Kennedy's counsel an opportunity to comment on the proposed instructions but this offer was rejected. Upon recall, the court instructed the jury in detail on Kennedy's constitutional right not to testify, that the state must prove Kennedy's guilt beyond a reasonable doubt, and that they were not to draw any inference from the state's attempt to call Kennedy to the stand. The jury was similarly instructed at the trial's end. The trial court's instructions cured any possible prejudice that the state's error may have caused. Accordingly, we conclude beyond a reasonable doubt that there is no reasonable probability that the state's error contributed to Kennedy's convictions. *See Billings*, 110 Wis.2d at 666–67, 329 N.W.2d at 194–95.

### *JURY INSTRUCTION ON "GREAT BODILY HARM"*

In regard to the charge of causing injury by intoxicated use of a vehicle, Kennedy maintains that the trial court incorrectly instructed the jury on the element of "great bodily harm". Section 939.22(14), Stats., provides:

> 'Great bodily harm' means bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the

function of any bodily member or organ or other serious bodily injury.

The trial court instructed the jury that "great bodily harm" meant "serious bodily injury" as recommended in the pattern jury instruction. Wis JI—Criminal 1262 (1986). Under the facts of this case, we conclude that no detailed explanation of this element was necessary.

The extent of the injuries suffered by the two surviving children was not drawn into issue at Kennedy's trial. The state introduced overwhelming evidence that the children had sustained great bodily harm. Kennedy did not introduce any evidence from which the jury could have concluded to the contrary. Furthermore, Kennedy's counsel not only failed to object to the instruction as proposed but reassured the trial court that he had no objection. Counsel's decision not to object was consistent with sound trial strategy. An objection may have led to a detailed explanation of "great bodily harm" and impressed upon the jury the seriousness of the surviving children's injuries caused by Kennedy's alleged misconduct. Failure to timely object to jury instructions constitutes a waiver of any alleged defects in those instructions. *See State v. Brown*, 118 Wis.2d 377, 381–82, 348 N.W.2d 593, 596 (Ct. App. 1984); *see also* secs. 972.10(5) and 805.13(3), Stats. Under these circumstances, we find no error in the instruction as given.

## *SENTENCING DISCRETION*

Kennedy argues that the trial court abused its discretion by imposing a sentence totaling nineteen years for six convictions arising from a single incident. For each of the four deaths, Kennedy received a four-year

sentence, which is one year less than that permitted by law. *See* secs. 939.50(3)(d), 940.09(1), Stats. For each of the two injuries, Kennedy received an eighteen-month sentence, which is six months less than that permitted by law. *See* secs. 939.50(3)(e), 940.25(1), Stats. All of the sentences were imposed consecutively.

Sentencing is left to the trial court's discretion, and review is limited to determining whether the court has abused its discretion. *State v. Harris*, 119 Wis.2d 612, 622, 350 N.W.2d 633, 638 (1984). There is a strong policy against interfering with the trial court's sentencing discretion, and it is presumed that the trial court has acted reasonably. *Id.* The complainant bears the burden of demonstrating from the record that the trial court acted unreasonably. *Id.* at 622–23, 350 N.W.2d at 638–39.

The trial court considered the proper factors at Kennedy's sentencing including "the gravity of the offense, the character of the offender, and the need for the protection of the public." *Id.* at 623, 350 N.W.2d at 639. The gravity of Kennedy's misconduct is self-evident; he killed four people and seriously injured two children. The trial court noted that Kennedy's prior record of drunk driving and other criminal offenses evinced a general disregard for society's rules and laws. The court also properly considered Kennedy's lack of remorse, the recommendation of the presentence investigation report, and that a lesser sentence would unduly

depreciate the seriousness of his misconduct. *Id.* Although the sentence imposed is a substantial one, we conclude that the trial court did not abuse its discretion.

*By the Court.* —Judgment and order affirmed.