STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward TOWNSEND, Defendant-Appellant.†

Court of Appeals

*No. 2006AP1440–CR. Submitted on briefs January 23, 2007.*
*—Decided January 24, 2008.*

2008 WI App 20

(Also reported in 746 N.W.2d 493.)

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Aaron R. O'Neil*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Higginbotham, P.J., Vergeront and Lundsten, JJ.

¶ 1. HIGGINBOTHAM, P.J. Edward Townsend appeals a judgment of conviction for felon in possession of a firearm as a party to a crime, contrary to Wis. Stat. §§ 941.29(2)(a) and 939.05 (2005–06),[1] and armed rob-

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

bery by threat of use of a dangerous weapon as a party to a crime, contrary to Wis. Stat. §§ 943.32(2) and 939.05, and an order denying his motion to suppress evidence. Townsend contends that the circuit court should have suppressed unrecorded statements he made while in custody in St. Paul, Minnesota. He argues the circuit court should have applied Minnesota law to the motion to suppress, which requires suppression of evidence gathered from an unrecorded custodial interview, and not Wisconsin law, which presently encourages electronic recording of custodial interviews[2] but does not require suppression of evidence obtained from an unrecorded interview of an adult.[3] Because we conclude that the circuit court properly applied Wisconsin law to Townsend's suppression motion, we affirm.

## *Background*

¶ 2.  The relevant facts, stated in the criminal complaint and found by the circuit court following a *Miranda-Goodchild*[4] hearing, are undisputed on appeal. On September 14, 2004, officers of the St. Paul, Minnesota Police Department arrested Edward Townsend on

---

[2] Wisconsin Stat. § 968.073(2) provides as follows:

It is the policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony unless . . . good cause is shown for not making an audio or audio and visual recording of the interrogation.

[3] In 2005, the supreme court adopted a rule pursuant to its supervisory authority mandating the electronic recording of custodial interviews of juveniles, and adopting suppression as the remedy. *State v. Jerrell C.J.*, 2005 WI 105, ¶¶ 58–59, 283 Wis. 2d 145, 699 N.W.2d 110.

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966); *State ex rel. Goodchild v. Burke*, 27 Wis. 2d 244, 133 N.W.2d 753 (1965).

a Minnesota warrant, following a lawful traffic stop. Officers recovered the vehicle in which Townsend was a passenger, a 1996 Chevrolet Impala SS, that had been reported stolen in an armed car-jacking two days earlier in Milwaukee, Wisconsin. The Minnesota officers contacted Milwaukee Police Detectives Tracy Becker and Willie Huerta to inform them that they had recovered the stolen vehicle.

¶ 3. Huerta interviewed Townsend in the Ramsey County Jail in St. Paul about the September 12 car-jacking, and a second car-jacking that occurred in Milwaukee on August 7, 2004. Huerta and Townsend were the only persons present during the interview. The interview was not recorded electronically. At the time, Huerta was aware that Minnesota law requires recording of custodial interviews. By the conclusion of the interview, Townsend signed statements admitting to his involvement in both car-jacking incidents.

¶ 4. Townsend was charged with one count of felon in possession of a firearm as a party to a crime and two counts of armed robbery with threat of force as a party to a crime. Townsend moved to suppress the statements on the ground that Minnesota law requires suppression of evidence obtained from a custodial interview that is not electronically recorded, *see State v. Scales*, 518 N.W.2d 587 (Minn. 1994). Townsend argued that Minnesota law applies because, under *State v. Kennedy*, 134 Wis. 2d 308, 320, 396 N.W.2d 765 (Ct. App. 1986), Wisconsin courts apply the law of the jurisdiction in which evidence is gathered when resolving issues concerning the manner and method of obtaining evidence.

¶ 5. The circuit court held a hearing on the motion. Townsend testified at the hearing, and alleged that he was not read his *Miranda* rights, was assaulted

repeatedly by Huerta and was denied access to a lawyer. Huerta testified that he read Townsend the *Miranda* warnings, and denied Townsend's other allegations. The circuit court believed Huerta, and explicitly found that Townsend's testimony was not credible. The circuit court also concluded that Minnesota's suppression rule did not apply because Wisconsin rules of criminal procedure apply in Wisconsin courts.

### *Discussion*

■

¶ 6. On appeal, Townsend challenges only the circuit court's decision to apply Wisconsin law rather than Minnesota law to the issue of whether to suppress statements gathered in Minnesota.[5] This choice-of-law dispute is a question of law subject to our independent review. *See Coady v. Cross County Bank, Inc.*, 2007 WI App 26, ¶ 9, 299 Wis. 2d 420, 729 N.W.2d 732.

¶ 7. Townsend contends that the circuit court erred in denying suppression of the unrecorded statements because it mistakenly applied Wisconsin law instead of Minnesota law, which requires suppression of evidence obtained from an unrecorded custodial interrogation. *See Scales*, 518 N.W.2d 587. He argues that the circuit court so erred because Wisconsin cases establish that the law of the state in which the evidence was gathered (here, Minnesota) applies when deciding a

---

[5] Townsend does not argue that his statements should have been suppressed under Wisconsin law. We therefore do not address this issue, except to note that the supreme court in *Jerrell* did not mandate the suppression of evidence from *all* unrecorded custodial interviews, only evidence from interviews of juveniles held in custody. *See Jerrell*, 283 Wis. 2d 145, ¶¶ 44–58.

motion to suppress based on police methods of evidence collection. He cites *Kluck v. State*, 37 Wis. 2d 378, 389, 155 N.W.2d 26 (1967), in which the Wisconsin Supreme Court applied Minnesota law in determining the validity of a Minnesota arrest, and *Kennedy*, 134 Wis. 2d at 320, where we said: "The manner and method of obtaining evidence is governed by the law of the jurisdiction in which the evidence is secured."

¶ 8. The State argues that Huerta's failure to electronically record Townsend's statement does not require suppression of the statement because *Scales* is not a rule governing the collection of evidence in Minnesota, but a rule of admissibility governing Minnesota courts. It contends the Minnesota rule does not "directly constrain" evidence gathering in Minnesota, and has no effect on Wisconsin courts. Further, the State maintains that, even if *Scales* is construed as a rule governing the methods of collecting evidence, the circuit court did not err in not suppressing the statement because it was obtained by a Wisconsin official. .

¶ 9. We agree with the State that Minnesota's suppression rule does not apply in this case, but for different reasons. The result in this case does not turn on whether the Minnesota Supreme Court in *Scales* set a rule of evidence collection or merely a rule of admissibility for Minnesota courts. It turns on the rule established by our own case law regarding the circumstances under which Wisconsin courts apply the law of another state.

¶ 10. In *Kluck*, Minnesota officers arrested defendant Kluck in a Minneapolis drug sting. The Minnesota officers conducted a search upon arresting Kluck, and recovered bottles of narcotics that connected Kluck to the burglary of a Durand, Wisconsin pharmacy. *Kluck*, 37 Wis. 2d at 384. Kluck was convicted of the burglary,

and, on appeal, challenged the legality of the search that led to the discovery of the narcotics. *Id.* at 388–89. With little discussion, the Wisconsin court applied Minnesota law in determining the validity of the arrest. *Id.* at 389. It does not appear that the question of which law to apply, that of Wisconsin or Minnesota, was a disputed issue in the case. *See id.* at 388–90.

¶ 11.   In *Kennedy*, the defendant was involved in a catastrophic alcohol-related traffic accident in Pierce County in which four people were killed and two children were seriously injured. *Kennedy*, 134 Wis. 2d at 314. Defendant Kennedy was also injured, and was immediately taken to a medical facility in Minnesota, where a blood sample was taken that determined that Kennedy's blood alcohol concentration (BAC) was in excess of the legal limit. *Id.* Kennedy was subsequently charged with multiple counts of vehicular homicide and causing great bodily injury by intoxicated use of a motor vehicle, and was convicted on all counts by a jury. *Id.* at 314–15.

¶ 12.   On appeal, Kennedy challenged the admission at trial of the results of the BAC test conducted at the Minnesota hospital. *Id.* at 319. He argued that the BAC results were inadmissible because the Minnesota authorities failed to administer the test consistent with the requirements of Wisconsin's implied consent statute, Wis. Stat. § 343.305 (1983–84). *Id.* Citing *Kluck*, we rejected this argument and applied Minnesota law to determine the admissibility of the BAC test results, explaining that it would be unreasonable for the Minnesota officials to be familiar with the procedures of another state. *Id.* at 320.

¶ 13.   In *State v. Dyleski*, 154 Wis. 2d 306, 452 N.W.2d 794 (Ct. App. 1990), the defendant, while in police custody in Houston, Texas, confessed to a murder

700

that occurred in Superior, Wisconsin, in a tape-recorded interview and by a written statement given to Texas officers. *Id.* at 309. Following a jury trial held in Wisconsin, defendant Dyleski was convicted of the Superior murder. *Id.* On appeal, Dyleski challenged the admission of the written statements. *Id.* at 311. He argued that under Texas law, the statements were inadmissible, and, citing *Kennedy*, that the circuit court erred in failing to apply Texas law in determining the admissibility of the written statements. *Id.* We agreed that under *Kennedy*, Texas law applied, but determined the admission of the written statements was harmless error because the oral statements were admissible under Texas law, and the written statements were substantially similar to the oral ones. *Id.* at 311–12.

¶ 14. In each of these cases, the officers who gathered the evidence used to convict the defendants in a Wisconsin court were officers of the foreign state, and could not reasonably have been expected to be familiar with Wisconsin evidence-gathering procedures. In *Kennedy*, we explained that application of the law of the forum state (our state) would be unreasonable when the evidence was collected in another state by an officer of that state.

> The manner and method of obtaining evidence is governed by the law of the jurisdiction in which the evidence is secured. *A contrary conclusion would result in the unreasonable requirement that officials in one jurisdiction be aware of and implement the procedures adopted in a foreign jurisdiction.* Consequently, Minnesota law governs the means by which the blood test evidence may be obtained. Here, the blood test evidence was not obtained in violation of Minnesota law. Thus, noncompliance with [WIS. STAT. §] 343.305 did not render the blood test evidence inadmissible.

*Kennedy*, 134 Wis. 2d at 320 (emphasis added) (citations omitted).

¶ 15. Townsend's argument focuses on one sentence in *Kennedy* ("[t]he manner and method of obtaining evidence . . ."), but ignores the rationale of our decision in that case. We applied the law of the foreign state in *Kennedy* because, where Minnesota health providers performed the BAC test in Minnesota, it would be "unreasonable" to require them to "be aware of and implement the procedures" adopted by Wisconsin for BAC testing. Likewise, in *Kluck* and *Dyleski*, we applied the law of the foreign jurisdiction when the officers that gathered the evidence were from that jurisdiction. Consistent with the rationale supporting *Kennedy*, we conclude that Wisconsin law shall be applied to evidence gathered in a foreign state by a Wisconsin official charged with the duty to gather evidence for use in a Wisconsin criminal prosecution.

¶ 16. Turning to the facts of this case, we conclude the circuit court was correct in applying Wisconsin law to the question of whether to suppress the unrecorded custodial statement. Townsend was arrested in Minnesota on a Minnesota warrant following a lawful traffic stop. The Minnesota police were subsequently informed that the vehicle in which Townsend was a passenger had been reported stolen in a car-jacking two days earlier in Milwaukee. Huerta, a detective from Milwaukee, interviewed Townsend in a Minnesota jail about the car-jacking and about another car-jacking that also occurred in Milwaukee. Townsend was subsequently charged and convicted in Wisconsin of crimes related to the car-jackings. The statement taken by Huerta in Minnesota was used in the Wiscon-

sin trial. Applying the rationale set forth in *Kennedy*, it is unreasonable to require and expect Huerta to be aware of and implement Minnesota's evidence gathering rules.[6]

¶ 17.   For the foregoing reasons, we conclude that, under the facts of this case, the circuit court correctly chose to apply Wisconsin law rather than Minnesota law to the question of whether to suppress statements obtained during an unrecorded custodial interview that occurred in Minnesota. We therefore affirm.

*By the Court.*—Judgment affirmed.

---

[6] We acknowledge that the officer in this case, Detective Huerta, testified that he was aware of Minnesota's evidence gathering procedures. However, Huerta's subjective awareness is beside the point. The issue of which law applies is not based on the actual knowledge of the officer in a given case, but on whether an officer in those circumstances could reasonably be expected to know the law of the jurisdiction.