**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**John Joseph RAFTERY,
Defendant-Appellee.**

No. 75–2021.

United States Court of Appeals,
Ninth Circuit.

April 12, 1976.

Rehearing and Rehearing En Banc
Denied June 7, 1976.

---

Frank H. Easterbrook, Asst. Solicitor (argued), Washington, D. C., for plaintiff-appellant.

James F. Collins (argued), San Diego, Cal., for defendant-appellee.

## OPINION

Before CHAMBERS and KOELSCH, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Appellee, John Joseph Raftery, was charged in an indictment with perjury before a grand jury in violation of 18 U.S.C. § 1623. The district court denied his motion to dismiss the indictment, but granted his motion to suppress evidence seized in a prior criminal prosecution in state court. The Government has appealed from the suppression order. The indictment is pending, awaiting the outcome of this appeal.

Based upon an affidavit of a Nevada narcotics agent, a California Justice of the Peace on September 12, 1972 issued a warrant to search Raftery's residence in Squaw Valley. Federal, Nevada and California law enforcement officers had received information that "hashish oil" (liquid marijuana resin) was being manufactured in the residence. The warrant found "probable cause" and commanded the officers "to make immediate search in the daytime (or at any time of the day or night, good cause being shown therefor) of the premises". The warrant was issued at 9:30 P.M. State and federal officers executed the warrant at 6:15 A.M. on the morning of September 13. They found Raftery and six other persons at the residence, a large quantity of equipment used for refining hashish, a quantity of hashish, and smoking equipment. Some of the items were found in Raftery's bedroom, where he was arrested.

Raftery and the other persons found in the residence were indicted in state court for various narcotics offenses. They moved to suppress the evidence which had been seized on the ground that under California Penal Code § 1533, a warrant may be served at night (defined as 10:00 P.M. to 7:00 A.M.) only when the magistrate expressly indicates in writing on the warrant that he is authorizing a nighttime search.[1] The motion to suppress was granted on April 6, 1973. The indictments were also dismissed because, in light of the suppression, the evidence was insufficient to prosecute.

Raftery appeared before a federal grand jury on January 23, 1973 and on later dates and testified concerning his participation in

---

* Honorable W. J. Jameson, United States Senior District Judge for the District of Montana, sitting by designation.

1. Two California appellate courts have held that § 1533 requires the magistrate to "insert a direction" in the warrant to authorize a night search and that the "failure of the magistrate to mark the form appropriately cannot be held to be equivalent to such insertion." *Powelson v. Superior Court,* 9 Cal.App.3d 357, 363, 88 Cal.Rptr. 8, 12 (1970). See also *People v. Mills,* 251 Cal.App.2d 450, 59 Cal.Rptr. 489 (1967) and *Call v. Superior Court,* 266 Cal.App.2d 163, 71 Cal.Rptr. 546 (1968).

marijuana smuggling and distribution activities. Before giving this testimony he was granted use and derivative use immunity and was ordered to testify. In testimony given on May 24, 1973 Raftery was asked whether he had ever taken part in or been on premises where hashish oil was manufactured. To each question he answered "No". Based on this testimony and upon the evidence obtained in the search of Raftery's residence the grand jury indicted Raftery for perjury.

The district court concluded that the indictment was proper, but that the items seized in the search of Raftery's residence in the state criminal prosecution would not be admissible in evidence in the federal perjury prosecution. The Government contends, inter alia, that the exclusionary rule should not be extended to prevent a conviction for perjury occurring after the illegal seizure has taken place. We agree.[2]

In *United States v. Winsett*, 9 Cir., 518 F.2d 51, 53 (1975) this court discussed the rationale and limitations of the exclusionary rule.[3] We noted that "The judicially created remedy was designed not to compensate for the unlawful invasion of one's privacy but to deter future unlawful police conduct," citing *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1969). As we recognized in *Winsett*, "The rule has never been interpreted to proscribe the use of illegally seized evidence in all proceedings or against all persons," *United States v. Calandra*, 414 U.S. at 348, 94 S.Ct. at 620, 38 L.Ed.2d at 571."[4]

In *Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), the Court refused to extend the exclusionary rule to grand jury proceedings, holding that a witness summoned before a grand jury may not refuse to answer questions on the ground that they are based on illegally obtained evidence.[5] Weighing "the benefits to be derived from [an] extension of the exclusionary rule" against the "potential damage to the role and functions of the grand jury" (414 U.S. 350, 94 S.Ct. 621, 38 L.Ed.2d 573), the Court concluded that to extend the rule would achieve only a "speculative and minimal advance in the deterrence of police misconduct at the expense of substantially impeding the role of the grand jury." Id. at 351–352, 94 S.Ct. at 622, 38 L.Ed.2d at 573.

In *Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1953) the defendant testified on direct examination that he had never possessed any narcotics. To impeach this testimony the Government introduced the testimony of an officer who had participated in an unlawful search and seizure in an earlier case. In holding that this evidence was admissible solely for the purpose of attacking the defendant's credibility, the Court said in part:

"It is one thing to say that the Government cannot make an affirmative use of evidence unlawfully obtained. It is quite another to say that the defendant can turn the illegal method by which evidence in the Government's possession was obtained to his own advantage, and provide himself with a shield against contradiction of his untruths. Such an extension of the *Weeks* doctrine [*Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341,

remedial objectives are thought most efficaciously served." 414 U.S. at 348, 94 S.Ct. at 620, 38 L.Ed.2d at 571.

---

2. Having reached this conclusion, it is unnecessary to consider the other contentions of the Government.

3. In *Winsett* it was held that the exclusionary rule should not be extended to probation revocation hearings, since the potential harm to the function of the proceedings would substantially outweigh any benefits of its minimal deterrent effects. *Winsett* was followed in *United States v. Vandemark*, 522 F.2d 1019 (9 Cir. 1975).

4. The opinion in *Calandra* continues: "As with any remedial device, the application of the rule has been restricted to those areas, where its

5. A witness summoned to appear and testify before a grand jury refused on Fifth Amendment grounds to testify regarding illegally seized evidence. The Government then requested immunity, after which the district court held that the witness need not answer any grand jury questions based on the suppressed evidence. The court of appeals affirmed, and the Supreme Court reversed.

58 L.Ed. 652 (1914)] would be a perversion of the Fourth Amendment.

"[T]here is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility." 347 U.S. at 65, 74 S.Ct. at 356, 98 L.Ed. at 507.

Following *Walder*, it was held in *Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), that statements inadmissible against a defendant in the prosecution's case in chief because of lack of the procedural safeguards required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may be used for impeachment purposes to attack the credibility of the defendant's testimony. The Court concluded that "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation, with prior inconsistent [statements]." 401 U.S. at 226, 91 S.Ct. at 646, 28 L.Ed.2d at 5.

In the recent case of *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), the rule of *Harris* was followed where a suspect in police custody had been given the *Miranda* warnings, had stated he would like to telephone a lawyer, but was told he could not do so until he reached the station. He then provided inculpatory information. The Court held that this information was admissible solely for impeachment purposes after he had given contrary testimony at the trial. The Court concluded that, as in *Harris*, "the 'shield provided by *Miranda*, is not to be perverted to a license to testify inconsistently, or even perjuriously, free from the risk of confrontation with prior inconsistent utterances.'" 420 U.S. at 722, 95 S.Ct. at 1220, 43 L.Ed.2d at 577.

We recognize that none of the cases cited *supra* is precisely in point factually; but we conclude that the principles enunciated are applicable. The deterrent effect of excluding the evidence resulting from the illegal search would be minimal.[6] We agree with the Government that the "remedial objectives" of the exclusionary rule were fully served by the suppression of the seized evidence and dismissal of the state court criminal proceedings and by the granting of immunity to Raftery.

The alleged perjury occurred before a grand jury in the federal court after the illegal seizure and suppression of the evidence in the state court.[7] Its commission was outside the control of the prosecutorial officers in the state court action. Under *Calandra* a witness is required to testify before a grand jury and may not refuse to answer questions on the ground that they are based on evidence obtained from an unlawful search and seizure. He should not be allowed to commit perjury in that testimony. The purpose of the exclusionary rule was satisfied when the state officials were forbidden to use the illegally obtained evidence to prove the narcotics offenses. The purpose of the rule would not be served by forbidding the Government from using the evidence to prove the entirely separate offense of perjury before a grand jury occurring after the illegal search and seizure and suppression of the evidence in the state court.

The Fifth Circuit in the recent case of *United States v. Turk*, 526 F.2d 654, 667 (1976), reached the same conclusion in a similar factual situation, holding that "evidence obtained in an illegal search may properly be admitted in the perjury trial of a victim of the search when the alleged perjury occurred after the search and with

---

**6.** Moreover, it should be noted that the prosecution was aborted by a negligent act of a magistrate in failing to meet a technical requirement of the California statute when he signed the warrant. Clearly the "imperative of judicial integrity" would not be offended by the use of this evidence in the trial on a perjury charge in federal court which occurred after the evidence had been seized and suppressed in

state court. See *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975).

**7.** The illegal search and seizure occurred on September 13, 1972. The evidence was suppressed in state court on April 6, 1973. The alleged perjurious testimony was given on May 24, 1973 when Raftery was aware of the illegal seizure and suppression of the evidence.

the knowledge on the part of the victim that the search had taken place."

Reversed and remanded for further proceedings consistent with this opinion.