VANCE EVANS McGEE, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 18731

VANCE E. McGEE, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 19164

November 27, 1989                                   782 P.2d 1329

*Vance E. McGee,* In Proper Person, Appellant.

*David Parraguirre,* Public Defender, and *Jane G. McKenna,*
Chief Appellate Deputy Public Defender, Washoe County, for
Appellant.

*Brian McKay,* Attorney General, Carson City; *Mills Lane,*
District Attorney, and Larry G. Sage, Deputy District Attorney,
Washoe County, for Respondent.

# OPINION

By the Court, STEFFEN, J.:

The issue in these consolidated cases is whether a confession elicited without prior *Miranda*[1] warnings may be used as affirmative evidence to prove perjury in a trial subsequent to the one concerning the confessed crime. We hold that it may and therefore affirm the judgment of conviction for perjury in Docket No. 18731. We also dismiss the appeal from McGee's judgment of conviction, pursuant to a guilty plea, of one count each of burglary and grand larceny under Docket No. 19164.

## The Facts

On June 6, 1985, an apartment shared by three women was burgled. McGee was arrested and prosecuted for the crime. Following a jury trial, McGee was found guilty of one count of burglary and two counts of grand larceny. The State sought to have McGee sentenced as a habitual criminal. Nevertheless, the district court sentenced McGee to ten years for the burglary and five years each for the grand larcenies. The sentences for the grand larcenies were to run concurrently with each other and consecutively to the burglary sentence. The record from McGee's first appeal to this court did not reflect the disposition of the habitual criminal allegation.

On appeal, this court reversed the judgments of conviction based upon a violation of McGee's Fifth Amendment rights, and remanded the matter to the district court for a new trial. *See* McGee v. State, 102 Nev. 458, 725 P.2d 1215 (1986). Immediately following this decision, and before McGee was again brought to trial on the burglary charge, the State filed an information against McGee charging him with one count of perjury. The perjury charge was based upon the fact that McGee had taken the stand in his prior burglary trial and had denied having committed the burglary. McGee was tried on the perjury charge before a jury, but the jury was unable to reach a verdict and a mistrial was declared.

At McGee's second perjury trial, the State first presented the testimony of the victims of the burglary and of the police officers who investigated the burglary to establish independently that McGee had committed the burglary. The State then called police officer David Kuzemchak to testify. Kuzemchak testified that he had known McGee for approximately a year to eighteen months. Over that period of time, Kuzemchak had seen McGee thirty or forty times, and had given him citations for minor violations on

[1]Miranda v. Arizona, 384 U.S. 436 (1966).

fifteen or twenty occasions. Kuzemchak had responded to the burglary call at the apartment. Kuzemchak knew that McGee was a suspect in the burglary. Nevertheless, on the afternoon following the burglary, before checking in to work, Kuzemchak went to see McGee, who was already incarcerated. Kuzemchak, dressed in his uniform, met with McGee in an interview room. Kuzemchak did not give McGee his *Miranda* warnings. Instead, Kuzemchak asked McGee if he had committed the burglary in question. Kuzemchak testified that McGee confessed to the burglary, and stated that he did it in order to pay off citations Kuzemchak had given him earlier. Kuzemchak did not make a report concerning this alleged confession and only brought it to the attention of the district attorney immediately before McGee's first jury trial for the burglary. No testimony concerning McGee's alleged confession was presented at his burglary trial.

Kuzemchak also testified that on December 26, 1986, following McGee's burglary trial, Kuzemchak had McGee in custody for some undisclosed reason, and was transporting him to the police department. Kuzemchak did not recall whether McGee was handcuffed at the time, but he was under arrest and was not free to leave. Kuzemchak testified that McGee confronted him with his trial testimony and accused Kuzemchak of lying on the stand at McGee's burglary trial.[2] Kuzemchak said that McGee again admitted the burglary, but insisted that he had not done it because of the traffic citations. Kuzemchak stated that he had not informed McGee of his *Miranda* rights at the time he received this second alleged confession.

The transcript of McGee's testimony at the burglary trial was admitted as an exhibit during the perjury trial. The State then read excerpts from the transcript to the jury. In the transcript, McGee denied having committed the burglary and the grand larcenies in issue. He also told an incredible story about how he came to be in possession of one of the victim's rings which had been taken in the burglary.

The defense presented no witnesses and McGee elected not to testify. The jury returned a verdict of guilty and the district court determined that McGee was a habitual criminal and sentenced him to serve fifteen years in the Nevada State Prison. McGee has appealed this conviction under Docket No. 18731.

Meanwhile, the burglary prosecution had been proceeding toward a new trial. The burglary trial had been delayed several

---

[2]Kuzemchak did not testify concerning the alleged confession at the burglary trial. During McGee's first perjury trial, Kuzemchak testified that McGee had accused him of lying in his testimony at the preliminary hearing on the perjury complaint. Kuzemchak was apparently mistaken when he testified in this case that McGee had accused him of lying in his testimony at the burglary trial.

times at McGee's request. After McGee was sentenced in the perjury matter, however, he determined that it would be to his advantage to plead guilty to the burglary charge and to one count of grand larceny. The district court sentenced McGee to serve ten years for the burglary and a consecutive five years for grand larceny. This sentence was to run concurrently with McGee's sentence in the perjury case. McGee's proper person appeal from his judgment of conviction for burglary and grand larceny is before this court as Docket No. 19164.

## Discussion

*Docket No. 18731*

McGee insists that his perjury trial was infected with prejudicial error when the district court allowed Officer Kuzemchak to testify concerning the two burglary confessions uttered by McGee without benefit of the cautionary warnings mandated by *Miranda*. McGee is mistaken.

It is true that un-Mirandized confessions are not admissible as substantive evidence of guilt concerning the crime or crimes constituting the subject matter of such confessions. It is in that sense and in those instances that confessions violative of the *Miranda* doctrine may not be used offensively. Thus, the United States Supreme Court in Harris v. New York, 401 U.S. 222, 225 (1971), declared that "assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief." The Court also held that "every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury." *Id.*

In United States v. Havens, 446 U.S. 620, 626 (1980), the Court reaffirmed its earlier pronouncements stressing "the importance of arriving at the truth in criminal trials, as well as the defendant's obligation to speak the truth in response to proper questions." Thereafter, the Court emphasized "there is no gainsaying that arriving at the truth is a fundamental goal of our legal system [citation omitted]. We have repeatedly insisted that when defendants testify, they must testify truthfully or suffer the consequences. This is true even though a defendant is compelled to testify against his will." *Id.*

We decline to limit the consequences of a criminal defendant's perjurious testimony, contradicted by his own un-Mirandized confession, to whatever impeachment opportunities may be available to the State in the trial concerning the confessed crime. A contrary ruling would expand the exclusionary reach of the

*Miranda* doctrine and diminish the concept of truth as the paramount objective of criminal trials.

McGee testified on his own behalf during the trial concerning the charges of burglary and grand larceny. His remarks were exculpatory, shifting guilt to an individual named Pedro. McGee's testimony was also in direct conflict with his admissions of guilt to Officer Kuzemchak. On the occasion of each of the two inculpatory admissions by McGee, the officer, who knew McGee, failed to advise him of his *Miranda* entitlements. The un-Mirandized confession allegedly occurring before the burglary trial was not alluded to by the prosecution during trial. After this court reversed McGee's burglary and grand larceny convictions for reasons unrelated to the confession, McGee v. State, 102 Nev. 458, 725 P.2d 1215 (1986), the State quite responsibly sought to hold McGee accountable to the citizens of Nevada for his alleged attempt to frustrate the truth-seeking mechanisms of the earlier trial by an act of perjury. During McGee's perjury trial, the State offered the un-Mirandized confessions as evidence of McGee's perfidy in the previous trial. Because McGee did not testify in the perjury trial, the State appropriately introduced, as a foundation for the perjury charge, a transcript of McGee's sworn testimony in the trial involving the charges for burglary and grand larceny.

McGee, during his previous trial, and according to the State's case, willfully committed a new criminal offense when he sought to avoid accountability for his criminal acts of burglary and grand larceny by means of perjured testimony. The evidence of his alleged perjury was preserved in the certified transcript of the proceedings. The un-Mirandized confessions then became evidence of the new crime rather than the crimes concerning which the admissions were allegedly uttered. The State properly prosecuted McGee for the "new crime." By so doing, the State emphasized that criminal trials are not intended to be sporting contests where "anything goes." The crime of perjury is a serious and intended truth confound that should not be countenanced by the State or this court. *Harris* strongly addressed the subject of a criminal defendant's perjury, and stressed that "the shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." 401 U.S. at 226. At no time did the Court indicate that the "risk of confrontation" was limited to the trial in which the perjury occurred.

Moreover, if un-Mirandized confessants who perjure themselves are immune from criminal prosecution for their perjury, and risk only the prospect of impeachment from prior inconsistent admissions, they would enjoy a form of criminal immunity not accorded other witnesses and defendants. The only possible

justification for such preferential treatment would be to enhance the "punishment" of police officers who elicit or listen to confessions without previously administering the *Miranda* incantations. As observed hereafter, we do not perceive the need to expand the punitive aspects of *Miranda* beyond the existing exclusion of un-Mirandized confessions as substantive evidence in the State's case-in-chief in trials involving prosecution for crimes implicated in such confessions.

By analogy, the Ninth Circuit, in United States v. Raftery, 534 F.2d 854, *cert. denied,* 429 U.S. 862 (1976), reached the same conclusion when it refused to suppress evidence taken in violation of the Fourth Amendment in a subsequent perjury trial. After the State suffered the suppression of evidence in a narcotics prosecution because of an illegal search and seizure, the defendant subsequently was indicted for perjury in testifying before a federal grand jury. Prior to testifying in the grand jury proceeding, Raftery had been granted use and derivative use immunity, and was ordered to testify. Raftery's testimony was undermined by the contraband evidence excluded in the State prosecution. Although the federal district court sustained the indictment, it ordered that the evidence suppressed in the state court prosecution would not be admissible in the federal prosecution for perjury.

The *Raftery* court agreed with the Government's contention that the exclusionary rule "should not be extended to prevent a conviction for perjury occurring after the illegal seizure has taken place." *Id.* at 856. Moreover, the court declared that

> [T]he purpose of the exclusionary rule was satisfied when the state officials were forbidden to use the illegally obtained evidence to prove the narcotics offenses. The purpose of the rule would not be served by forbidding the Government from using the evidence to prove the entirely separate offense of perjury before a grand jury occurring after the illegal search and seizure and suppression of the evidence in the state court.

*Id.* at 857.

In United States v. Paepke, 550 F.2d 385 (1977), the Seventh Circuit, citing *Raftery,* held that evidence seized in violation of the Fourth Amendment could be used in a subsequent prosecution for tax fraud. Judge Tone, in a concurring opinion, stated cogently why McGee's un-Mirandized confession was properly admitted to prove perjury in the instant case:

> Inasmuch as "the primary, if not the sole, function of the exclusionary rule is deterrence," United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 3033 n.34, 49 L.Ed.2d 1046

(1976), there is as little to be said for the need to extend that rule to the facts here as there was in *Walder* [Walder v. United States, 347 U.S. 62 (1954)], *Harris* [Harris v. New York, 401 U.S. 222 (1971)], or *Hass* [Oregon v. Hass, 420 U.S. 714 (1975)]. *The rule has already had its deterrent effect when the state criminal charges resulting from the illegal search and seizure are aborted. The social value of any further deterrent effect that would result from applying the rule to bar the use of the evidence to prove the falsity of a later statement made under the penalties of perjury is so attenuated and conjectural as to be entitled to little weight. On the other side of the scale, extending the rule as defendant advocates would not only have the usual truth-suppressing effect,* see Elkins v. United States, 364 U.S. 206, 216, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), *but would encourage the commission of a future crime of false statement, thus converting the rule into a "personal constitutional right" of the defendant, which, Calandra* [United States v. Calandra, 414 U.S. 338 (1974)] tells us, *it is not.*

*Id.* at 394 (emphasis added). *See also* United States v. Lopez-Martinez, 725 F.2d 471 (9th Cir.), *cert. denied,* 469 U.S. 837 (1984); United States v. Finucan, 708 F.2d 838 (1st Cir. 1983); United States v. Turk, 526 F.2d 654 (5th Cir.), *cert. denied,* 429 U.S. 823 (1976); People v. Drain, 535 N.E.2d 630 (N.Y. 1989).

The *Miranda* sanction is one of exclusion. Its purpose is amply served by denying prosecutors the right to use inculpatory statements taken in violation of *Miranda* dictates to prove offenses implicated in such statements. To expand the benefits of the exclusionary sanction of *Miranda* to protect defendants from criminal prosecution for perjury seems difficult to justify. Subjecting police officers who violate *Miranda* procedures to accountability for a new and separate offense committed by an accused is of dubious societal value. It is arguably reasonable to attempt to discourage police disregard of *Miranda* constraints by suppressing the fruits thereof in prosecutions for crimes acknowledged in confessions violative of *Miranda;* reason is less discernible in a policy that compounds punitive measures against police officers by immunizing *Miranda* beneficiaries from criminal prosecution for perjury. Perjurious testimony by defendants is beyond the control of police authorities; *Miranda* violations are not. Admitting un-Mirandized confessions to prove the separate and distinct crime of perjury, committed by defendants in the act of testifying falsely in open court, would provide little or no incentive for police misbehavior.

In short, if *Miranda* must retain vitality as a rule of procedure and exclusion, it should apply only to crimes concerning which

un-Mirandized confessions are taken. If extended to insulate against prosecution for the new and different crime of perjury, the rule then enhances the windfall to criminal defendants at the expense of society at large who is again deprived of the right to hold such persons accountable for their conduct.

*Docket No. 19164*

Docket No. 19164 is a proper person appeal from a judgment of conviction, pursuant to a guilty plea, of one count each of burglary and grand larceny. The best that can be said of McGee's effort to overturn these convictions is that he has timely filed a notice of appeal without supplying any briefs or other authorities other than the record of proceedings in the district court. Although the initial trial record and the present record reflect overwhelming evidence of guilt and a knowing, voluntary plea of guilt, we prefer to adhere to our previous rulings refusing to entertain challenges to guilty pleas on direct appeal. *See* Bryant v. State, 102 Nev. 268, 721 P.2d 364 (1986). McGee may seek relief from his guilty plea through means of a post-conviction proceeding in the district court under NRS 34.360 or NRS 177.315. His proper person appeal will, therefore, be dismissed.

### Conclusion

For the reasons hereinbefore specified, the judgment of conviction for perjury under Docket No. 18731 is affirmed; the proper person appeal under Docket No. 19164 challenging the judgments of conviction pursuant to a guilty plea is dismissed.

MOWBRAY and ROSE,[3] JJ., concur.

SPRINGER, J., with whom YOUNG, C. J., agrees, dissenting:

I dissent because it is clear to me from Nevada and federal case law that the prosecution is not allowed to use a coerced[1] confession as affirmative evidence in the state's case.

---

[3]THE HONORABLE ROBERT E. ROSE, Justice, participated in the decision of this appeal upon the record, briefs and recording of the oral argument.

[1]Failure to give the required warnings affords a "bright-line legal *presumption of coercion,* requiring suppression of all unwarned statements." Oregon v. Elstad, 470 U.S. 298, 306-07 n.1 (1985) (our emphasis). There is no doubt of the illegality of the confession used in this case. McGee was first prosecuted for burglary and convicted by a jury. In the burglary trial the Washoe County prosecutor "deliberately and repeatedly sought to discredit [McGee's] post-arrest silence," which prosecutorial misconduct, this court held, constituted a "blatant disregard for well-established and frequently

The issue has already been decided. Walker v. State, 102 Nev. 290, 720 P.2d 700 (1986). Under *Walker* this kind of confession cannot be used as independent evidence.[2]

The *Walker* rule and what should be the rule in this case is in harmony with federal constitutional law which also holds that statements taken in violation of *Miranda* can be properly considered *"only* in passing on [the defendant's] credibility and not as evidence of guilt." Berkemer v. McCarty, 468 U.S. 420, 430 (1984) (our emphasis). Our ruling in *Walker* and the rulings of the United States Supreme Court on the point are consistent with the long history of Anglo-American jurisprudence which forbids the introduction of forced evidence of a crime from the mouth of the accused. The state, here, as in any criminal case, has the burden of proving its case with competent and legal evidence. In this case, the state relied on illegal and inadmissible evidence in its case-in-chief. The Supreme Court of the United States forbids such practice, and so should we. "Whereas the goal of the fourth amendment's[3] exclusionary rule is to deter unlawful police con-

stated principles of fundamental fairness." McGee v. State, 102 Nev. 458, 461, 725 P.2d 1215, 1217 (1986). After this court set aside the burglary conviction by reason of the stated deliberate and blatant disregard of fundamental fairness, the Washoe County prosecutor decided to pursue a perjury charge against McGee based on the charge that McGee lied during the burglary trial and used the coerced confession as a basis for this prosecution.

[2]We noted in *Walker* that "Walker's constitutional rights were violated" in a case in which "[n]ot only did Walker not testify, [but also] there is nothing inherently contradictory about the statement. . . ." The majority makes much of the fact that both the defendant's not taking the stand and the noncontradictory nature of the statement makes *Walker* inapplicable to the present case. To this it must be said that the reliance in *Walker* on Harris v. New York, 401 U.S. 222 (1971) (in which the United States Supreme Court held that a coerced confession could be constitutionally employed for impeachment purposes when a defendant takes the witness stand) and our preoccupation in *Walker* with federal constitutional rights belies any interpretation of *Walker* that would permit coerced confessions to be used as affirmative evidence. The fact that we relied both on constitutional grounds and on the ground that the two statements did not appear contradictory does not change this.

[3]The majority suggests that other courts have approved the use of illegal evidence at collateral trials for crimes other than the crimes which led to the illegal actions of the police in obtaining the evidence. Without exception, the cases cited by the majority are inapposite to the case at bar. In each of those cases, evidence obtained in violation of the *fourth* amendment was used in criminal trials totally unrelated to the criminal investigations that led to the illegal police activity. The issue that primarily concerned the courts in these cases was whether, at the time of the illegal activity, it was foreseeable that the defendant would commit additional crimes related to the seized evidence. All but one of those cases considered whether illegally obtained *physical* evidence should be excluded at a subsequent trial. Finally, with one exception, the collateral crimes involved were prosecuted by federal authorities after state authorities had obtained physical evidence illegally. *See* United

duct, . . . the goal of the fifth amendment's exclusionary rule is to assure trustworthy evidence." United States v. Sangineto-Miranda, 859 F.2d 1501, 1518 (6th Cir. 1988) (citations omitted); *see* Michigan v. Tucker, 417 U.S. 433, 448 (1974). The truth or falsity of a statement is not the determining factor in making the decision as to whether to exclude it. Statements which have been obtained in violation of the right not to be compelled to testify against oneself have been regarded as untrustworthy, and a system of criminal law enforcement which comes to depend on the confession will, in the long run, be less reliable and more subject to abuses than a system relying on independent investigation. Jackson v. Denno, 378 U.S. 368, 388-89 (1964).

In cases of statements made without the benefit of *Miranda* warnings, the presumption of coercion is unrebuttable. *See* United States v. Patterson, 812 F.2d 1188, 1193 (9th Cir. 1987), *cert. denied*, 485 U.S. 922, 108 S.Ct. 1093 (1988). In harmony with Allan v. State, 103 Nev. 512, 746 P.2d 138 (1987), I have no quarrel with the *Harris* rule. I agree that "[t]he shield provided by *Miranda* cannot be perverted into a license to use perjury by

States v. Raftery, 534 F.2d 854 (9th Cir.), *cert. denied,* 429 U.S. 862 (1976) (state authorities illegally seized drugs and drug paraphernalia; the evidence was later used in a federal prosecution for perjury before a federal grand jury); United States v. Paepke, 550 F.2d 385 (7th Cir. 1977) (money unlawfully seized by state authorities in narcotics investigation was admitted as evidence in a federal prosecution for tax fraud committed months after the illegal seizure); United States v. Lopez-Martinez, 725 F.2d 471 (9th Cir.), *cert. denied,* 469 U.S. 837 (1984) (post-arrest statement allegedly taken in violation of the fourth amendment made by defendant in prosecution for possession of marijuana was admitted to show intent in a prosecution eight years later for possession of heroin where the sole defense was that defendant thought the heroin in his possession was marijuana); United States v. Finucan, 708 F.2d 838 (1st Cir. 1983) (documents seized illegally by state officials in automobile fraud case could not be used in a federal prosecution for mail fraud arising from the same conduct, but could be used in a subsequent federal prosecution for perjury alleged to have been committed after the evidence was seized); United States v. Turk, 526 F.2d 654 (5th Cir.), *cert. denied,* 429 U.S. 823 (1976) (state officials illegally seized the contents of a tape recording; the tape recording and evidence obtained as a result of the illegal seizure was admitted at a federal perjury trial of an individual identified on the tape recording after the individual testified before a federal grand jury with full knowledge that the federal authorities were in possession of the tape recording); People v. Drain, 535 N.E.2d 630 (N.Y. 1989) (money and checkbook illegally seized by police officer upon suspicion of theft used in perjury trial after defendant allegedly testified falsely concerning entries in the checkbook). In none of these cases was a testimonial admission of guilt taken in flagrant violation of the accused's fifth amendment rights used as substantive evidence in support of a subsequent perjury charge. *See* Michigan v. Tucker, 417 U.S. 433, 448 (1974); United States v. Sangineto-Miranda, 859 F.2d 1501, 1518 (6th Cir. 1988) (distinguishing between non-testimonial physical evidence and alleged confessions of guilt).

way of a defense, free from the risk of confrontation with prior, inconsistent utterances.'' Under *Harris* and *Walker,* one who takes the stand may be impeached by the use of an illegally obtained confession; but to allow a criminal conviction to be based on a coerced statement of the accused would be to allow a criminal conviction to be based on untrustworthy, illegally obtained evidence. Such a procedure would violate both the federal and Nevada constitutions.

I would hold that use of the confession was reversible error and would also reverse the conviction on the plea of guilty because it is inextricably tied to the perjury conviction.

One final note: Aside from the established legal and constitutional impermissibility of using coerced confessions[4] as affirmative evidence in perjury prosecutions arising out of the confessed crime, I have another reason to question the wisdom of the decision reached by the majority. Here we have the state incapacitating its own prosecutorial processes by virtue of coerced confessions and the mentioned deliberate and blatant disregard of ''fundamental fairness.'' (*See* footnote 1). The majority opinion seems to allow the state to absolve itself of previous sins and to procure a perjury conviction against the same defendant using the illegal confession that could not have been admitted in the burglary prosecution. I am afraid that this case sends a message to state's attorneys that if they lose a criminal case because of the exclusion of an unlawfully obtained confession, they will be able to use the excluded confession anyway simply by filing a later perjury charge against the same defendant. This seems like subterfuge to me. This kind of procedure may never be followed, but the invitation to do so is given by this opinion. The use of coerced confessions and engagement by the state in ''deliberate'' and ''blatant'' disregard of fundamental fairness for an accused person may be too high a price to pay for putting a burglar behind bars.

---

[4]The confession in this case is rather interesting. Police officer Kuzemchak claims that he interrogated McGee in jail (without *Miranda* warnings) and that McGee admitted to him that he committed the burglary in order to pay off three traffic citations issued by the officer to McGee on the day of the burglary. Kuzemchak did not make a record of this confession and did not, according to the district attorney's office, call the matter to the state's attention until the day of the burglary jury trial. (McGee denies ever meeting Kuzemchak until the day of the burglary and says that although he received three traffic citations from Kuzemchak on the day of the burglary, he could not have gotten fifteen others claimed to have been issued to him by Kuzemchak because he was not living in the State of Nevada during the time in question.)