**UNITED STATES of America, Appellee,**

v.

**Carlos VARELA, Defendant–Appellant.**

**No. 1382, Docket 91–1577.**

United States Court of Appeals,
Second Circuit.

Argued April 23, 1992.

Decided June 30, 1992.

Paul E. Warburgh, Jr., New York City (Axelrod & Warburgh, of counsel), for defendant-appellant.

Lawrence D. Gerzog, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, Asst. U.S. Atty., of counsel), for appellee.

Before: OAKES, Chief Judge, KEARSE and WALKER, Circuit Judges.

OAKES, Chief Judge:

This appeal concerns the scope of the exclusionary rule. Following arrest on narcotics charges on March 16, 1990, Carlos Varela made incriminating statements concerning himself and others who were allegedly involved in cocaine trafficking. These statements were subsequently suppressed as the fruit of an arrest without probable cause and, in response to a government motion, the indictment against Varela was dismissed. Later that year, Varela, testifying before a grand jury under a grant of immunity, contradicted these suppressed statements. Varela was charged with attempting to influence and impede a grand jury investigation and with making false declarations to a grand jury, in violation of 18 U.S.C. §§ 1503, 1623(a) (1988); and the previously suppressed statements were adduced at trial—over Varela's objection—to prove the government's case. Varela appeals from a judgment of the United States District Court for the Eastern District of New York, Reena Raggi, Judge, convicting him on both counts, following a jury trial.

We must decide in this appeal whether the exclusionary rule bars the use of unlawfully obtained post-arrest statements—statements that were suppressed for the purpose of proving that Varela committed one crime—to prove that Varela subsequently committed another crime, perjury. The deterrence theory of the exclusionary rule, which now holds sway, requires us, before suppressing evidence in a particular proceeding, to balance the deterrent effect of applying the exclusionary rule against the cost to society of excluding relevant information. *James v. Illinois*, 493 U.S. 307, 313–19, 110 S.Ct. 648, 652–55, 107 L.Ed.2d 676 (1990); *United States v. Janis*, 428 U.S. 433, 453–54, 96 S.Ct. 3021, 3031–32, 49 L.Ed.2d 1046 (1976); *Tirado v. Commissioner of Internal Revenue*, 689 F.2d 307, 310 (2d Cir.1982), *cert. denied*, 460 U.S. 1014, 103 S.Ct. 1256, 75 L.Ed.2d 484 (1983). We join the First, Fifth, and Ninth Circuits in concluding that the exclusionary rule does not apply in such a case, *see United States v. Finucan*, 708 F.2d 838, 845 (1st Cir.1983); *United States v. Turk*, 526 F.2d 654, 667 (5th Cir.), *cert. denied*, 429 U.S. 823, 97 S.Ct. 74, 50 L.Ed.2d 84 (1976); *United States v. Raftery*, 534 F.2d 854, 857 (9th Cir.), *cert. denied*, 429 U.S. 862, 97 S.Ct. 167, 50 L.Ed.2d 141 (1976), although we are leery of blind acceptance of the reasoning that the deterrent effect of excluding post-arrest statements in connection with a subsequent offense is negligible and the cost of excluding these statements is high.

I

In 1990, the United States Postal Inspection Service ("USPIS") and the Drug Enforcement Administration ("DEA"), commenced a joint operation to arrest individuals receiving cocaine from abroad through the United States postal system. Varela was arrested as part of the controlled delivery of several packages containing cocaine to one Antonio Landasi.

On March 15, 1990, a letter carrier delivered Notices of Attempted Delivery to Landasi's residence for parcels containing cocaine. The following day agents observed a taxi containing Varela and another passenger, Gonzalo Ramirez, stop at Landasi's home. Landasi joined Varela and Ramirez in the taxi and they travelled to the local post office. While Varela and Ramirez remained in the waiting taxi, Landasi claimed the parcels. Agents immediately arrested Landasi, Ramirez, and Varela and took them into the post office for questioning. After being advised of his rights, Varela spoke with federal agents and in the

process incriminated himself, as well as Landasi, Ramirez, and Eduardo Pena. In these post-arrest statements, Varela detailed certain aspects of Pena's involvement in the sale and importation of cocaine. After his indictment on narcotics charges, but prior to trial, Varela moved to suppress his post-arrest statements. The suppression question was referred to a Magistrate Judge for report and recommendation. After a pre-trial suppression hearing, the Magistrate Judge found that the federal agents lacked probable cause to arrest either Varela or Ramirez and recommended that Varela's post-arrest statements be suppressed as the fruit of an unlawful arrest. The government did not oppose the recommendation. On October 9, 1990, in response to a government motion, the indictment against Varela was dismissed.

On December 13, 1990, Varela was subpoenaed to testify before a grand jury investigating cocaine trafficking by some of Varela's alleged co-conspirators. Varela invoked his Fifth Amendment right and was granted immunity pursuant to 18 U.S.C. § 6002 (1988). Testifying before the grand jury, Varela denied having stated that Eduardo Pena was involved in cocaine trafficking—contradicting his March 16, 1990, post-arrest statement. Varela was subsequently tried for and convicted of endeavoring to influence, obstruct, or impede a grand jury and of making false declarations to a grand jury. Varela appeals from these convictions on the grounds that the district court erred in denying his motion to suppress his March 16, 1990 statement for the purposes of his perjury trial.

## II

■ In *Walder v. United States,* 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 (1954), the Supreme Court permitted the prosecution to introduce evidence derived from an unlawful search of the defendant's home to impeach the defendant. Similarly, in *Harris v. New York,* 401 U.S. 222, 226, 91 S.Ct. 643, 646, 28 L.Ed.2d 1 (1971), the Court permitted statements that were inadmissible because of violations of a defendant's *Miranda* rights to be used as prior inconsistent statements to impeach the defendant's credibility. *Walder* and *Harris,* however, do not answer the question whether the fruits of an illegal arrest or seizure may be admitted in the prosecution's case-in-chief in a perjury trial, when the alleged perjurious conduct occurred after the illegal arrest. In assessing whether the scope of the exclusionary rule extends to such a situation, we must examine the Supreme Court's recent approach to the Fourth Amendment. The Court has instructed us that the Fourth Amendment does not grant a defendant a personal right to exclude evidence obtained in violation of his or her Fourth Amendment rights. *See, e.g., United States v. Leon,* 468 U.S. 897, 906, 104 S.Ct. 3405, 3411–12, 82 L.Ed.2d 677 (1984); *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048–49, 49 L.Ed.2d 1067 (1976). In a line of cases beginning with *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974), the Court has made it clear that the exclusionary rule serves primarily to deter future government misconduct by eliminating the incentive to conduct illegal searches, seizures, and arrests. *See Illinois v. Krull,* 480 U.S. 340, 347–48, 107 S.Ct. 1160, 1165–66, 94 L.Ed.2d 364 (1987); *Janis,* 428 U.S. at 446, 96 S.Ct. at 3028; *see also United States v. Tejada,* 956 F.2d 1256, 1260–62 (2d Cir.1992); *Tirado,* 689 F.2d at 309. *But see Tirado,* 689 F.2d at 315–17 (Oakes, J., concurring) (arguing that an unlawful search or arrest and the subsequent introduction of the evidence at trial constitute a single course of unlawful conduct from which a defendant has a right to be free); James L. Oakes, *The Exclusionary Rule—A Relic of the Past?, in Constitutional Government in America* 151, 151–53 (Ronald Collins ed. 1980). To determine whether the likelihood of deterrence justifies the exclusion of evidence—under the present Supreme Court rationale for the exclusionary rule which, we are bound to follow—the deterrence value of a particular application of the exclusionary rule is balanced against society's interest in bringing all probative evidence to· bear on the questions before the court. *See James,* 493 U.S. at 313–19, 110 S.Ct. at 652–55;

*Janis,* 428 U.S. at 453–54, 96 S.Ct. at 3031–32; *Tirado,* 689 F.2d at 310. The deterrent effect must be "substantial and efficient" for the exclusion alternative to prevail in this cost-benefit analysis. *Tirado,* 689 F.2d at 310 (quoting *Janis,* 428 U.S. at 453, 96 S.Ct. at 3031–32).

Assessing the likelihood of deterrence requires an analysis of the motivation of the law enforcement officials that made the unlawful arrest or seizure. This inquiry requires us to speculate whether law enforcement officials were likely to have contemplated the challenged use of the evidence at the time of the arrest or seizure. *Tirado,* 689 F.2d at 310–11.[1] Furthermore, if law enforcement officials already are prohibited from using unlawfully seized evidence to convict a defendant of the offenses under investigation, then, in theory, the officials already have been deterred from engaging in such activities; thus, the relevant question becomes whether any incremental deterrence results from excluding the same evidence in a subsequent proceeding. *See Calandra,* 414 U.S. at 351–52, 94 S.Ct. at 621–22; *Tirado,* 689 F.2d at 311.

Applying this teaching to the case at hand, we are forced to conclude that the addition marginal deterrence achieved by excluding Varela's March 16, 1990 statement in his perjury trial does not outweigh the societal benefit from permitting the use of the statement in this context. On the deterrence side of the balance, for the exclusion of Varela's statement at the perjury trial to have any incremental deterrence value, we would have to make the unlikely assumption that when the DEA and USPIS agents arrested Varela unlawfully and solicited his cooperation, they were motivated in part by the belief that Varela would later choose to lie to a grand jury—an offense that could be proved by the use of the unlawfully obtained statements even if they were suppressed in regard to the co-

caine trafficking offense. *See Turk,* 526 F.2d at 667. We refuse to ascribe such clairvoyance to law enforcement officers; at the time of Varela's arrest, the possibility of subsequent perjurious testimony was too remote to serve as a motivating factor to DEA and USPIS officers bent on breaking up a suspected cocaine importation scheme. Without such a motivation on the part of the investigating officers the effect of exclusion will rarely, if ever, rise to the level of a substantial deterrent.

We note, however, that there is at least one situation in which a substantial deterrent effect would be realized by suppressing fruits of an illegal arrest or seizure in a perjury proceeding. If the unlawful arrest or seizure followed the perjured testimony—instead of preceding it—law enforcement officials would have the requisite incentive to engage in Fourth Amendment violations to obtain convictions of those suspected of perjury. *See* 4 Wayne R. LaFave, *Search and Seizure* § 11.6(c), at 500 (2d ed. 1987); *see also Raftery,* 534 F.2d at 857. Varela argues for a second scenario in which suppression would lead to substantial deterrence. When the proponents of the suppressed evidence are agents of the same sovereign that unlawfully obtained the information, as in the present case, Varela contends that suppression in the subsequent perjury proceeding will result in substantial incremental deterrence. *See Janis,* 428 U.S. at 456 n. 31, 96 S.Ct. at 3033 n. 31; *Raftery,* 534 F.2d at 857. Although intrasovereign involvement may be a factor when assessing the motivation of law enforcement officials, the fact of intrasovereign involvement does not provide, in and of itself, "a reliable predictor of deterrence." *Tirado,* 689 F.2d at 313; *see also United States v. Lopez–Martinez,* 725 F.2d 471, 476 (9th Cir.), *cert. denied,* 469 U.S. 837, 105 S.Ct. 134, 83 L.Ed.2d 74 (1984); 4 LaFave, *supra,* § 11.6(c), at 501–02. Of course, under the pre-*Calandra*

---

1. In *Tirado,* the panel majority recognized that inferences from a law enforcement official's duties may not fully capture the deterrence value of exclusion. The majority noted that actual evidence of cooperation between the seizing or arresting officials and the proponent of the evi-

denced must also enter into the calculus. *Tirado,* 689 F.2d at 312. In the case at hand, however, there is no evidence of such collusion; therefore, our inquiry need not go beyond an assessment of motive in the abstract.

rationale for the exclusionary rule—now displaced—intrasovereign involvement would have been a reason for exclusion.

On the other side of the balance, the statements in question were both probative and central to the matter before the district court, thus, their exclusion would come at a cost to the truth-seeking process. But in addition to the truth-suppressing effect that would result if Varela's statements were excluded in the subsequent perjury trial, it has been pointed out that the suppression of such statements would, in effect, convert the exclusionary rule into a license to commit perjury. *See Harris,* 401 U.S. at 226, 91 S.Ct. at 646; *Turk,* 526 F.2d at 667. Although we are concerned that repeated weakening of the exclusionary rule through rote application of the *Calandra* analysis will lead law enforcement officers to conclude that the benefits to be gleaned from unlawful arrests exceed the costs—particularly when a large conspiracy is under investigation—in the case at hand, the cost of allowing a defendant to use the exclusionary rule as a shield for perjury outweighs the incremental deterrent effect from their exclusion. We conclude that statements obtained as fruit of an illegal arrest may be introduced in a perjury trial, if the alleged perjury occurred after the illegal arrest and there is no actual evidence of collusion between the proponents of the evidence and the arresting officers. The district court, thus, properly admitted Varela's March 16, 1990, post-arrest statements at his perjury trial. In so holding, however, we are mindful that when engaging in the prescribed balancing test to determine the scope of the exclusionary rule what hangs in the balance is the proper weight accorded to individual liberty from oppressive police conduct versus the societal interest in effective criminal trials— matters that merit close analysis. We, therefore, decline to consider in the abstract whether the same balance applies to offenses other than perjury.

WALKER, Circuit Judge, concurring:

I fully agree with Chief Judge Oakes' enunciation of the principles and supporting case law that lead to the result that permits the unlawfully obtained statement to be used to prove a subsequent perjury. Unlike my colleague, however, I have no reluctance in applying them; nor do I share his "concern with the repeated weakening of the exclusionary rule through rote application of the ... analysis" prescribed in *United States v. Calandra,* 414 U.S. 338, 347–48, 94 S.Ct. 613, 619–20, 38 L.Ed.2d 561 (1974) and its progeny. Society pays a heavy price when relevant probative evidence of a defendant's guilt is excluded from consideration at trial. In my view, the conclusion that such an exclusion can properly be justified only by its deterrent effect on unlawful future governmental conduct and then only when the deterrence is "substantial and efficient" *United States v. Janis,* 428 U.S. 433, 453, 96 S.Ct. 3021, 3031–32, 49 L.Ed.2d 1046 (1976) as determined upon an appropriate cost-benefit analysis and not "to enforce ideals of governmental rectitude" in the abstract, *see United States v. Payner,* 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980), is a sound one. In any event, it is the law which we are bound to apply. I do so absent the misgivings expressed by my able colleague.